Joe Rivera GUZMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 190–94.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 24, 1997.

Mark Darrow Wilson, Austin, for appellant.

Robert Smith, Asst. Dist. Atty., Austin, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge.

Appellant was convicted of the offense of possession of heroin and punishment was assessed at twenty years' imprisonment. Texas Controlled Substances Act, Tex. Health & Safety Code Ann. Section 481.115 (Vernon 1992). The Austin Court of Appeals reversed appellant's conviction and remanded the cause to the trial court. *Guzman v. State*, 867 S.W.2d 126 (Tex.App.—Austin 1993). In its petition for discretionary review, the State presented the following question:

"If an officer knows from prior training and experience that heroin is commonly carried in a dealer's mouth packaged in small balloons, and it is common for the dealer to swallow the balloons when approached by the police, does probable cause to arrest arise when a tip that a particular dealer is secreting heroin in his mouth is corroborated by the suspect's failure to comply with a lawful order to stop and his overt swallowing of the contents of his mouth?"

Essentially, the State argues the Court of Appeals erred when it held the police did not have probable cause to arrest appellant. We agree with the State and therefore reverse the decision of the Court of Appeals.

On the afternoon of November 18, 1992, Officer Troy Gay of the Austin Police Department was patrolling the 1700 block of East First Street which was an area well-known for drug trafficking. While patrolling, Gay saw a male pedestrian flag down a passing vehicle. Gay saw a passenger in this vehicle give the pedestrian cash in exchange for an object the pedestrian took from his mouth. Believing he had witnessed an unlawful sale of narcotics, the officer detained both parties. Officers Jimmy Cardenas and Ronald Lara responded to Officer Gay's call for assistance.

The pedestrian told the officers he knew where they could "get a lot more heroin" than "what we're speaking of now." See *Guzman*, 867 S.W.2d at 127. The pedestrian then stated that he had personally seen appellant, an older, small Hispanic male wearing a brown leather jacket, with balloons of heroin in his mouth at approximately the same time the police detained the pedestrian.[1] See *id*. Shortly thereafter, the informant spotted appellant walking nearby and pointed him out to the police.

Officer Cardenas testified that the officers then began walking hurriedly towards appellant, saying, "Hey, stop." Cardenas stated that appellant "kind of turned and looked at us and started walking a little faster." Officer Cardenas testified that at that time he asked appellant what he had in his mouth. Cardenas testified that as the officers ran up to appellant, appellant began swallowing. Cardenas testified that he believed appellant was swallowing balloons of heroin. Cardenas testified he then grabbed appellant around his throat and ordered him to "spit it out."[2] Appellant continued trying to swallow but Cardenas squeezed harder causing appellant to spit out three small balloons.

Appellant was transported to a hospital where one more balloon was recovered. The balloons were later found to contain heroin. Prior to trial, appellant sought to have the trial court suppress the admission of the heroin into evidence, arguing it was the product of an unlawful warrantless arrest. The trial court overruled appellant's motion to suppress.

### Court of Appeals' Opinion

 The Austin Court of Appeals determined that appellant's arrest was warrantless and analyzed the facts pursuant to Article 14.01, V.A.C.C.P. The Court of Appeals examined the arrest in light of the principle

---

**1.** Each of the officers testified that the use of balloons to transport heroin in one's mouth is a common practice among drug traffickers.

**2.** The State concedes that appellant was arrested when the officer seized him by the throat. *See* Article 15.22, V.A.C.C.P. (1977).

that "an investigating officer's hunch, suspicion, or good faith perception is not alone sufficient to constitute probable cause for an arrest." *Guzman,* 867 S.W.2d at 130, citing *Stull v. State,* 772 S.W.2d 449, 451 (Tex.Cr. App.1989). While this principle is well-established, the Court failed to appreciate the definition of probable cause. Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Amores v. State,* 816 S.W.2d 407, 413 (Tex.Cr.App.1991). The determination of the existence of probable cause concerns "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." See *Woodward v. State,* 668 S.W.2d 337, 345 (Tex.Cr.App.1982) (opinion on rehearing), cert.denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. See *id.;* see also *Brinegar v. United States,* 338 U.S. 160, 174–75, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) (probable cause is more than "bare suspicion"); *United States v. Woolery,* 670 F.2d 513, 515 (5th Cir.1982). The rule of probable cause seeks to accommodate the sometimes opposing interests of safeguarding citizens from rash and unreasonable police conduct and giving fair leeway to legitimate law enforcement efforts. See *Woodward,* 668 S.W.2d at 345–46.

The Court of Appeals concluded that the "totality of the circumstances in this cause did not give the police probable cause to arrest appellant. Because the balloons of heroin were seized incident to, or were the fruits of appellant's unlawful arrest, the district court abused its discretion by overruling appellant's motion to suppress." *Guzman,* 867 S.W.2d at 130. Although the Court of Appeals claimed to have applied the "totality of the circumstances test," after reviewing the opinion we find that the Court actually examined each fact independently and found that none of the facts standing alone were sufficient to warrant a finding of probable

cause. The court should have determined whether the facts, when taken as a whole, were sufficient to give the officers probable cause to arrest appellant.

### *Standard of Review*

■ In reviewing a trial court's ruling, an appellate court must first determine the applicable standard of review. The amount of deference a reviewing court affords to a trial court's ruling on a "mixed question of law and fact" (such as the issue of probable cause) often is determined by which judicial actor is in a better position to decide the issue. *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). If the issue involves the credibility of a witness, thereby making the evaluation of that witness' demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. *Miller,* at 114–16, 106 S.Ct. at 452. On the other hand if the issue is whether an officer had probable cause to seize a suspect, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination.

In a recent decision, the United States Supreme Court held that, although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The Court stated, "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Ornelas,* 517 U.S. at ——, 116 S.Ct. at 1662, citing *Miller,* 474 U.S. at 114, 106 S.Ct. at 451–52.

In this case, the Court of Appeals, after affording deference to the trial court's determination of the historical facts leading up to appellant's arrest, "decided" *de novo* that there was no probable cause for appellant's arrest. Also affording deference to the trial court's determination of the historical facts,

we decide *de novo* that the Court of Appeals erred in this respect by misapplying the totality of the circumstances test and by applying an incorrect definition of probable cause.[3]

The concurring and dissenting opinion contends the Court of Appeals' *de novo* review of the trial court's ruling on the probable cause issue and our *de novo* review of the decision of the Court of Appeals on this issue are inconsistent with this Court's decision in *Arcila v. State* and the gloss the concurring and dissenting opinion puts on this Court's more recent decisions in *DuBose v. State* and *State v. Carter*. See *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Cr.App.1996); *State v. Carter*, 915 S.W.2d 501, 503–04 (Tex.Cr.App. 1996); *Arcila v. State*, 834 S.W.2d 357 (Tex. Cr.App.1992). According to the concurring and dissenting opinion, *DuBose* and *Carter* should be read as requiring the intermediate appellate courts to show almost total deference to a trial court's ruling on an application of law to fact question.

However, as illustrated by some of the cases cited in footnote two of the concurring and dissenting opinion, this has not been how *DuBose* and *Carter* have been practically applied. For example, the concurring and dissenting opinion cites two intermediate appellate court opinions that have reversed a trial court's ruling on an application of law to fact question because "no reasonable view of the record could support the trial court's ruling." See *Jones v. State*, 926 S.W.2d 386, 389 (Tex.App.—Fort Worth 1996, pet. ref'd); *State v. Brown*, 927 S.W.2d 722 (Tex.App.— Texarkana 1996) (trial court's ruling "fell outside zone of reasonable disagreement"). When an intermediate appellate court reverses a trial court's ruling for these reasons it is effectively conducting a *de novo* review

no matter what the concurring and dissenting opinion wants to call it. The concurring and dissenting opinion also cites *Davis v. State*, 923 S.W.2d 781, 787 (Tex.App.—Beaumont 1996), which this Court just recently reversed after conducting a *de novo* review. See *Davis v. State*, 947 S.W.2d 240 (Tex.Cr. App. 1997).

Although the concurring and dissenting opinion claims *DuBose* and *Carter* adopted an almost total deferential standard of review on application of law to fact questions, *DuBose* and *Carter* effectively left the door open for the intermediate appellate courts to conduct *de novo* reviews when they disagree with a trial court's ruling on these questions. See *DuBose*, 915 S.W.2d at 498 (intermediate appellate courts should reverse a trial court's ruling on application of law to fact questions only when it appears the trial court applied an erroneous legal standard, *or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion*). *DuBose* and *Carter* effectively mandated almost total deference with one hand and then took it away with the other hand. See *DuBose*, 915 S.W.2d at 497–98.

In addition, a majority of this Court either explicitly or implicitly has disavowed the concurring and dissenting opinion's characterization of what *DuBose* and *Carter* hold. See *Villarreal v. State*, 935 S.W.2d 134, 138–39, 139–41, 145–50 (Tex.Cr.App.1996) (Mansfield, J., joined by White, J., and joined by McCormick, P.J., and Keller, J., with separate opinions), and at 150–54 (Baird, J., dissenting), and at 154 (Overstreet, J., dissenting). As illustrated by the various opinions filed in

---

**3.** The concurring and dissenting opinion claims our decision in this case on the probable cause issue goes beyond our duty to "review" decisions of the intermediate appellate courts. See Tex.R.App.Proc. 200(a) (this Court has discretionary authority to "review" a decision of an intermediate appellate court). The concurring and dissenting opinion also asks whether we are bypassing the Court of Appeals' decision and conducting our own *de novo* review of the trial court's ruling. However, affording deference to the trial court's implied fact findings as we should, we have reviewed the decision of the Court of Appeals that the police lacked probable

cause to arrest appellant. And, after having "reviewed" that decision, we disagree with the Court of Appeals and decide there was probable cause for appellant's arrest. Therefore, we disagree with the contention in the concurring and dissenting opinion that our decision in this case on the probable cause issue goes beyond our duty to "review" the decision of the Court of Appeals. Compare *Davis v. State*, 947 S.W.2d 240 (Tex.Cr.App. 1997) (holding the police officers' continued detention of the defendant and his vehicle was unreasonable, reversing the judgment of the intermediate appellate court, and remanding the case to the trial court).

*Villarreal,* it is very difficult to articulate a comprehensive consensus rule on the amount of deference appellate courts should afford to lower court rulings.

 However, as a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. See, e.g., *Villarreal,* 935 S.W.2d at 139–41 (McCormick, P.J., concurring). The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. See *id.* The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. See *id.* This Court may exercise its discretion to review *de novo* these decisions by the intermediate appellate courts. See *id.* This is about as comprehensive a statement of the applicable standards that we can provide. See *Villarreal,* 935 S.W.2d at 139 (McCormick, P.J., concurring) (if trial court "is not in an appreciably better position" than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions).

The concurring and dissenting opinion also claims our decision here calls into question this Court's holdings in cases such as *Montgomery v. State,* 810 S.W.2d 372 (Tex.Cr. App.1990) (op. On reh'g), and the "very definition of abuse of discretion." We disagree. Our discussion here primarily is meant to dispel the suggestion in Judge Meyers' dissenting opinion in *Villarreal* that *DuBose* and *Carter* should be read to stand for the proposition that appellate courts may not review *de novo* "mixed questions of law and fact" or "application of law to fact questions" whose resolution do not turn on an evaluation of credibility and demeanor. Compare *Villarreal,* 935 S.W.2d at 154–57 (Meyers, J.,

dissenting), with, *Villarreal,* 935 S.W.2d at 139–41 (McCormick, P.J., concurring).

Our decision also is meant to reaffirm the long-standing rule that appellate courts should show almost total deference to a trial court's findings of fact especially when those findings are based on an evaluation of credibility and demeanor—i.e., in reviewing a trial court's ruling on an "application of law to fact question," the appellate courts should view the evidence in the light most favorable to the trial court's ruling. See *Villarreal,* 935 S.W.2d at 139 (McCormick, P.J., concurring). Our decision does not call into question the "very definition of abuse of discretion." We merely decide that an abuse of discretion standard does not necessarily apply to "application of law to fact questions" whose resolution do not turn on an evaluation of credibility and demeanor. See *Villarreal,* 935 S.W.2d at 139–41 (McCormick, P.J., concurring).

Our decision in this case in no way affects this Court's holdings in cases such as *Montgomery.* *Montgomery* sets out the standard by which appellate courts review trial courts' evidentiary rulings which is an abuse of discretion standard. An appellate court's review of a trial court's evidentiary rulings generally does not involve an "application of law to fact question" or a "mixed question of law and fact." Moreover, this Court as well as our Legislature have recognized that trial courts have broad discretion in their evidentiary rulings and that trial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded. See, e.g., *Villarreal,* 935 S.W.2d at 139 (McCormick, P.J., concurring) (amount of deference appellate courts afford trial courts' rulings turns on which "judicial actor is better positioned" to decide the issue in question); Article 37.07, Section 3, V.A.C.C.P. (evidence may be admitted at the punishment phase of a noncapital case "as to any matter the court deems relevant to sentencing"); Article 37.071, Section 2(a), V.A.C.C.P. (same statutory rule for the punishment phase of a capital case).

Finally, *Arcila* is better understood to state the types of considerations that inform our decision on whether to exercise our dis-

cretion to review an intermediate appellate court's decision. See *Villarreal*, 935 S.W.2d at 141 (Clinton, J., concurring). This really is an internal matter that is subject to some debate among the various judges on the Court—i.e., should we exercise our discretionary authority to correct "errors" in the lower courts or should we exercise our discretionary authority as the "caretaker of Texas law." See *Arcila*, 834 S.W.2d at 360.

The debate here on whether to exercise our discretionary authority to review a decision of an intermediate appellate court is in some respects similar to the debate in the United States Supreme Court on whether to exercise its discretionary authority to review a lower court's decision. See *Kyles v. Whitley*, 514 U.S. 419, 434–60, 115 S.Ct. 1555, 1556–78, 131 L.Ed.2d 490 (1995) (Scalia, J., dissenting) (discussing United States Supreme Court general policy considerations on whether to grant a petition for a writ of certiorari "when the petitioner claims only that a concededly correct view of the law was incorrectly applied to the facts"). *Arcila* really has nothing to do with the standard of review we apply once we have exercised our discretion to review a decision of an intermediate appellate court or the standard of review the intermediate appellate courts apply in their review of trial court rulings. Based on the foregoing, *DuBose, Carter*, and *Arcila* are expressly overruled.

### De Novo Review

■ Article 14.01, V.A.C.C.P., provides that a peace officer may arrest an offender without a warrant for any offense committed in his presence. The test for probable cause for a warrantless arrest is:

"Whether at that moment the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense." *Stull*, 772 S.W.2d at 451.

■ Each search and seizure question must turn on the facts of that particular case.

*Gonzales v. State*, 648 S.W.2d 684, 687 (Tex. Cr.App.1983). Our analysis of the facts surrounding this arrest begins with the informant telling the officer that he knew where a lot more heroin could be found. The informant described appellant's appearance and told the officers that he would be carrying balloons of heroin in his mouth.

Several factors weigh in favor of the State's argument that the situation quickly escalated to give the officers probable cause to arrest appellant. First, appellant walked hurriedly away from the police when they approached him and asked him what he had in his mouth. This Court has held that avoiding officers is a factor to consider when determining probable cause.[4] See *Pyles v. State*, 755 S.W.2d 98, 109 (Tex.Cr.App.1988)(factors to consider when determining whether suspect may be committing an offense include flight when officers approach).

Second, appellant began overtly swallowing when the officers questioned him about the contents of his mouth. The Court of Appeals stated in its opinion that, "[s]wallowing ... is a normal body function and is not usually a sign that a person is engaged in criminal activity." *Guzman*, 867 S.W.2d at 129. This Court has previously upheld arrests under Article 14.01(b) when the officers "personally observed behavior that although not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense was then occurring." *Stull*, 772 S.W.2d at 452 citing *Miller v. State*, 458 S.W.2d 680 (Tex. Cr.App.1970).

Finally, appellant was found in an area that is well-known for drug trafficking. Although this fact alone is insufficient to find probable cause existed, it may become an important factor when considering the totality of the circumstances. *Cf. Thompson v. State*, 533 S.W.2d 825 (Tex.Cr.App.1976) (Court held that two men found in a high crime area carrying what appeared to be a woman's suitcase was sufficient probable cause to justify a detention). Moreover, we

---

4. Additionally, V.T.C.A., Penal Code, Section 38.04 states that it is an offense if a person intentionally flees when an officer is attempting to lawfully arrest or detain him.

can find no legal justification for the Court of Appeals' reliance on the fact that the officers failed to testify "that this was an area frequented only or mostly by drug dealers and users." *Guzman*, 867 S.W.2d at 129. This statement is overbroad and has never been used by the courts in making a probable cause determination.

Under the totality of the circumstances, the officers had probable cause to justify a warrantless arrest of appellant. The judgment of the Court of Appeals is hereby reversed and the judgment of the trial court is affirmed.

OVERSTREET, J., dissents.

MANSFIELD, Judge, concurring.

After detaining two individuals who he observed concluding what appeared to be a narcotics transaction, Officer Cardenas questioned one of them, who informed Officer Cardenas he knew where he could "get a lot more heroin." The individual stated he had personally observed the person (who is the appellant) who had the heroin and described his ethnicity, his clothing, and his physical stature. He further related that the person possessed ten balloons of heroin in his mouth. Two more police officers then arrived to assist Officer Cardenas. A few minutes later, the individual spotted appellant walking nearby and pointed him out to the police officers.[1]

The police officers then approached appellant and asked him to stop. Appellant reacted by walking away at a faster rate. Officer Cardenas testified he asked appellant what he had in his mouth and observed appellant making swallowing motions. Officer Cardenas ran to appellant, grabbed him and told him to "spit it out." Appellant, in response to force applied by Officer Cardenas, spit out three balloons, which subsequently were found to contain heroin. Another heroin-filled balloon was recovered from his stomach at the hospital.

A police officer may stop and frisk an individual if he has reasonable suspicion to believe the individual has been involved in a completed felony or if he has reasonable suspicion that the individual is about to or is committing a crime. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). An anonymous tip, provided it contains sufficient details which are subsequently corroborated, may be the basis to provide sufficient reasonable suspicion for a temporary investigative stop. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Amores v. State*, 816 S.W.2d 407 (Tex.Crim.App. 1991).

In the present case, the police were provided a detailed description by an informant of appellant, who the informant alleged possessed balloons filled with heroin. The informant's tip was corroborated a short time later when the police observed appellant, wearing the clothing the informant said he was wearing. They also observed appellant's physical characteristics, which matched those described to them a short time earlier by said informant, additional corroboration of the informant's tip. Clearly, they had reasonable cause to approach appellant and to stop and frisk him. *Amores, supra; Alabama v. White, supra; Woodward v. State*, 668 S.W.2d 337 (Tex.Crim.App.1982) (op. on rehearing), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

Additionally, appellant attempted to evade the police so that he could attempt to destroy the evidence by swallowing it—this action conducted in plain view of the officers. Thus the officers were entitled to take immediate action reasonably calculated to preserve evidence of a felony that reasonable persons on the scene would have concluded had been committed or was about to be committed by the appellant, given the totality of the circumstances. *Eisenhauer v. State*, 754 S.W.2d 159 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988); *United States v. Brad-*

1. Three police officers testified heroin dealers often place balloons containing heroin in their mouths while conducting transactions. The events described herein all took place in an area the officers testified was know to them as one where transactions involving illegal substances frequently occurred.

*ley,* 923 F.2d 362 (5th Cir.1991). "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." *Roaden v. Kentucky,* 413 U.S. 496, 505, 93 S.Ct. 2796, 2801–02, 37 L.Ed.2d 757 (1973). The force applied by Officer Cardenas was reasonable under the circumstances, which demanded he act quickly to prevent destruction of possible evidence of a felony, not to mention protecting appellant from possible loss of life should one of the balloons burst inside the appellant's digestive tract.

In light of the opinions from this Court and the Supreme Court cited above, I join the opinion of the Court reversing the judgment of the Court of Appeals and remanding the cause to the Court of Appeals for consideration of appellant's remaining points of error.

MEYERS, Judge, concurring and dissenting.

Trial judges of Texas need no longer feel the weight of responsibility for their rulings

on most mixed questions of law and fact because that burden will now be borne equally with courts of appeals and in some instances, with this Court. Today this Court holds that rulings of trial courts on most application of law to fact questions may be reviewed *de novo* by intermediate appellate courts and again by this Court.[1] *DuBose v. State,* 915 S.W.2d 493 (Tex.Crim.App.1996) and *State v. Carter,* 915 S.W.2d 501 (Tex.Crim.App.1996), delivered just over a year ago by a seven to two vote of this Court, are overruled. This Court's opinion in *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992), delivered just five years ago, is overruled as well. I concur in limited part and otherwise dissent.

I.

The majority does not agree with my interpretation of *DuBose* and *Carter* and says that I have given those opinions a peculiar "gloss." Majority opinion at 88. But I find myself in good company in light of the fact that the courts of appeals have interpreted *DuBose* and *Carter* as I have.[2] And with

1. *De novo* review may ultimately result in the suppression of more evidence, given that defendants will now get two bites at the apple—and the second bite will be unencumbered by any deference to the ruling in the trial court. In other words, since the reviewing court won't afford any deference to the trial court's ruling in conducting a *de novo* review, the defendant gets a wholly new opportunity to have the evidence suppressed.

2. *E.g., Shipman v. State,* 935 S.W.2d 880, 884–85 (Tex.App.—San Antonio 1996, pet. ref'd)(citing *DuBose* and applying abuse of discretion standard, holding that "while we think the issue of probable cause is a close one, viewed in a light most favorable to the trial court's legal conclusion, and believing that his conclusion is in a 'zone of reasonable disagreement,' ... we find that appellant's arrest ... was supported by probable cause"); *Brumbalow v. State,* 933 S.W.2d 298, 300–301 (Tex.App.—Waco 1996, no pet.)(citing *DuBose* and applying abuse of discretion standard to review of trial court's application of law to fact); *Davis v. State,* 923 S.W.2d 781, 787 (Tex.App.—Beaumont 1996)(citing *DuBose* for proposition that its review should be abuse of discretion as to facts and legal significance in context of trial court's ruling on motion to suppress), *reversed Davis v. State,* 947 S.W.2d 240 (Tex.Crim.App. 1997); *Jones v. State,* 926 S.W.2d 386, 389 (Tex.App.—Fort Worth 1996, pet. ref'd)(citing *DuBose* and *Carter,* and applying

abuse of discretion standard to trial court's ruling on reasonable suspicion, but concluding that no reasonable view of the record could support the trial court's ruling that defendant's leaving dark area at nighttime did not amount to reasonable suspicion); *State v. Brown,* 927 S.W.2d 722 (Tex.App.—Texarkana 1996, pet. ref'd)(citing *Carter* and *DuBose* for proposition that "in reviewing a trial judge's decision granting or denying a motion to suppress evidence, an appellate court is not to conduct a *de novo* review of the record, but is instead to limit its review of the trial court's rulings, both as to facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion," but concluding trial court's ruling fell outside zone of reasonable disagreement); *Corpus v. State,* 931 S.W.2d 30 (Tex.App.—Austin 1996, no pet.)(citing *DuBose* for proposition that abuse of discretion standard applies in reviewing trial court's ruling on motion to suppress, and applying that standard); *State v. Terrazas,* 933 S.W.2d 263, 270 (Tex.App.—El Paso 1996, pet. granted)(citing *DuBose* for proposition that trial court should only be reversed on motion to suppress when erroneous legal standard was applied or when no reasonable view of the record could support the trial court's conclusion viewed in light favorable to it, but concluding that no reasonable view of record supports trial court's ruling); *Matter of B.N.E.,* 927 S.W.2d 271, 274–75 (Tex.App.—Houston [1st Dist.] 1996, no

good reason in light of the exceedingly clear holdings of the Court in those two cases.

*DuBose* and *Carter* involved review of a trial court's ruling on a motion to suppress evidence. The court of appeals applied the correct law and considered all the relevant evidence in *DuBose*, but we granted review because the Court of Appeals "failed to afford deference to the trial court's ruling." Specifically, the court of appeals "engaged in a sort of *de novo* appellate review." *DuBose*, 915 S.W.2d at 495. This we found improper:

> At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. The trial judge is also the initial arbiter of the legal significance of those facts. The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. Even if the court of appeals would have reached a different result, so long as the trial court's rulings are at least within the 'zone of reasonable disagreement,' the appellate court should not intercede.

*Id.* at 496–97 (citations omitted). We emphasized "only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion" should the appellate court intercede. *Id.* at 497–98. We vacated the judgment of the court of appeals in *DuBose* "[b]ecause [that court] conducted a *de novo* review of the record, instead of deciding whether the trial court abused its discretion in this manner." These notions were reiterated in *Carter*, delivered the same day as *DuBose*. We vacated the judgment of the court of appeals in *Carter* on the ground that "we are not wholly satisfied [the court of appeals] was not conducting a *de novo* review for probable cause in this case." *Carter*, 915 S.W.2d at 505.

In the instant case, the Court adopts a standard of *de novo* review and indicates that *DuBose* and *Carter* ultimately support such a view.[3] Majority opinion at 88 (stating that *DuBose* and *Carter* "left the door open" to *de novo* review). But oddly, the majority overrules *DuBose* and *Carter* anyway. Perhaps the majority overrules them because it views those opinions as somehow unclear. *Id.* (stating that *DuBose* and *Carter* "effectively mandated almost total deference with one hand and took it away with the other hand"). But *DuBose* and *Carter* could not be plainer.

pet.)(recognizing, citing *Carter*, that court of appeals "does not conduct a de novo review of a trial court's probable cause determination" and that as "long as there is a substantial basis in the record to support the trial court's ruling, it is immune from appellate reversal").

**3.** The Court points to *Ornelas v. United States*, 59 Crim. L. Rep. (BNA) 2099, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), in support of adopting *de novo* review, but offers no discussion as to why that opinion is binding on state court appellate review. In *Ornelas*, the Supreme Court mandated *de novo* appellate review of a federal trial court's findings on probable cause and reasonable suspicion. While we are bound by the Supreme Court's interpretation of the federal constitution, the holding in *Ornelas* does not appear to emanate from the United States Constitution, but, rather, from practical considerations on the appropriate standard of appellate review. 59 Crim. L. Rep. at 2102, 517 U.S. at ——, 116 S.Ct. at 1662 (policy of deference would lead to "varied results" among courts; independent review is necessary to maintain control of and to clarify legal principles; *de novo* review unifies precedent); *see also id.* at 2103, at 517, 116 S.Ct.

at 1662 (Scalia, dissenting)(noting that what standard of review has been applied to mixed questions of law and fact depends upon "practical considerations"). There is no indication in *Ornelas* that *de novo* appellate review is a constitutional rule, applicable on direct appeal of state convictions in those appellate courts. *Compare Bose Corporation v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)(declaring that independent appellate review of trial court's finding of "actual malice" in cases governed by *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), "is a rule of federal constitutional law").

Further, even if *Ornelas* could be viewed as requiring state appellate courts to conduct *de novo* review, it does not stand for the proposition that this Court, in our capacity as a discretionary court, should be conducting *de novo* reviews. *Ornelas* held that federal courts of appeals should review *de novo* a trial court's rulings on probable cause and reasonable suspicion. The Supreme Court declined to conduct a *de novo* review itself, remanding the case to the court of appeals to conduct the review.

The courts of appeals' judgments were vacated in those cases for the reason that those courts conducted a *de novo* review of the trial court's ruling, rather than applying the properly deferential, abuse of discretion standard. Today the Court holds that *de novo,* rather than abuse of discretion, is the proper standard.

## II.

Maybe part of the majority's problem with *DuBose* and *Carter* stems from a misunderstanding of what is meant by an abuse of discretion standard. The majority says I interpret *DuBose* and *Carter* as "requiring the intermediate appellate courts to show almost total deference to a trial court's ruling on an application of law to fact question." Majority opinion at 89. I do not know what is meant by the "almost total deference" standard. *DuBose* and *Carter* hold that an abuse of discretion standard should be applied. That standard was described in the portions of those opinions quoted herein, and also by this Court in *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990)(opinion on reh'g). It is a deferential standard in that the reviewing court is not to substitute its own view of the question so long as the lower court's decision or ruling on the issue is a *reasonable* one. A case should not be reversed simply because the reviewing court disagrees with the conclusion of the lower court, assuming the lower court is within the zone of reasonable disagreement. As this Court explained in *Montgomery* in the context of ruling on the admissibility of evidence under Rules of Criminal Evidence 403 and 404:

> ... Reasonable men may disagree whether in common experience a particular inference is available. Where there is room for such disagreement, an appellate court that reverses a trial court's ruling on relevancy accomplishes nothing more than to substitute its own reasonable perception of common experience for that of the trial court. The appellate court effectively displaces the trial court, commandeering a function institutionally assigned elsewhere.

To avoid this anomaly, appellate courts uphold the trial court's ruling on appeal absent an "abuse of discretion." That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede.

810 S.W.2d at 391.

Referring to two of the court of appeals decisions cited in footnote 2 of my opinion, the majority says these courts of appeals did not apply *DuBose* and *Carter* properly. These two courts reversed the trial court's ruling on an application of law to fact question because "no reasonable view of the record could support the trial court's ruling." The majority says reversing a trial court's ruling for these reasons amounts to a *de novo* review. Majority opinion at 88. The majority further asserts that *DuBose* and *Carter* left the door open to *de novo* review when no reasonable view of the record supports the trial court's ruling. But that is what an abuse of discretion is all about— whether the lower court's conclusion was reasonable. If no reasonable view of the record would support its ruling, then it has abused its discretion. This has long been our understanding of abuse of discretion. *See Montgomery,* supra. The majority's opinion appears to call into question the very definition of abuse of discretion.

## III.

The majority sets forth its new standard of review for appellate courts and this Court on certain mixed questions of law and fact:

> [A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports. See, e.g., *Villarreal,* 935 S.W.2d at 139–41 (McCormick, P.J., concurring). The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. See *id.* The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. See *id.* This Court may exercise its

discretion to review *de novo* these decisions by the intermediate appellate courts. See *id.*

Majority opinion at 89. While I might not necessarily disagree with these standards, I am disappointed in the lack of guidance given on how they apply and it is unlikely more insight will be forthcoming since the majority says "this is about as comprehensive a statement of the applicable standards that we can provide." *Id.* For the benefit of the intermediate appellate courts, I will attempt to at least give my own interpretation of how I perceive the majority's new standard.

There will be little dispute on what constitutes historical facts. The ambiguity arises on what exactly is a mixed question of law and fact the resolution of which "turns on an evaluation of credibility and demeanor." Of course the fact portion of nearly all mixed questions involve an evaluation of credibility and demeanor. For instance, in making a probable cause determination, the credibility and demeanor of the testifying police officer are surely factors in the trial court's ruling. But they are not the *only* considerations in deciding whether there was probable cause. Even if the trial court (or reviewing court in conducting a *de novo* review) believes everything the police officer says that bears on the issue of probable cause, the court might nevertheless conclude that the facts testified to do not add up to probable cause. In other words, the ultimate determination of probable cause does not turn *exclusively* on the credibility of the witnesses, although it might be a factor. The same is not true of a situation like a ruling on a *Batson* claim. There, the trial court's ruling will almost always turn *exclusively* on its evaluation of credibility and demeanor. If the trial court believes everything the prosecutor says about his nonracial motives for striking the venireperson in issue, the trial court will almost always conclude that the strike was not racially motivated. This is the type of question I believe the majority is referring to in speaking of a mixed question of law and fact the ultimate resolution of which turns upon an evaluation of credibility and demeanor. *But see Yarbrough v. State,* No. 235–94 (Tex.Crim.App. June 11, 1997)(appellate courts are not bound by rule of deference in *Batson* context to accept every ruling of trial court especially where there is no specific finding of fact) *compare with id.* (McCormick, P.J., joined by Keller, J., concurring)(urging adoption of "almost total deference to a trial court's ruling" in *Batson* context since resolution of *Batson* claims "turns almost solely on credibility and demeanor). By my reckoning, most mixed questions of law and fact are of the kind that will be subject to *de novo* review under the majority's opinion.

In view of this Court's precedent since *DuBose* and *Carter,* evidencing an unwillingness of a majority to follow those opinions, I agree that they ought therefore be overruled, if for no other reason than for the benefit of the courts of appeals which have been faithfully following them and must surely be in a quandary in light of *Villarreal v. State,* 935 S.W.2d 134 (Tex.Crim.App.1996)(plurality opinion). At this point, the courts of appeals need a definitive rule as to their task in reviewing mixed questions of law and fact. To the extent the majority opinion satisfies this void, I concur. But as to *this* Court's role as a discretionary review court, I dissent to the majority's compulsion to overrule *Arcila* and hold that this Court may and should conduct *de novo* reviews of our own.[4]

### IV.

Though *Arcila* was still in its infancy, having only been delivered in 1992, it served this Court's jurisprudence well and its precedence will be sorely missed. In *Arcila,* we

---

**4.** The majority opinion further confuses the role of this Court in relation to "reviewing" decisions of the courts of appeals. If courts of appeals can now conduct *de novo* reviews and so may this Court, do we review the court of appeals' *de novo* review or do we simply bypass the court of appeals' opinion and conduct our own *de novo* review of the trial court's ruling? The majority says it is reviewing the Court of Appeals decision by holding that the Court of Appeals erred in its application of the totality of the circumstances test and by applying an incorrect definition of probable cause. But normally, when this Court determines that a court of appeals applied the wrong test or wrongly applied the proper test, we vacate and remand for that court to properly apply the proper test.

96

declined to re-evaluate the voluntariness of the consent to search at issue there. Recognizing the parameters of our role on discretionary review, we emphasized that when the Court of Appeals "fairly evaluated the [issue], using the correct legal standard, considering all relevant evidence in the record, and affording proper deference to the trial judge as primary factfinder" *then this Court has no further role:*

> ... Our principal role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications.... Even if our own decision might have been different [from that of the court of appeals] on the question presented, we cannot accept the proposition that an appellate court's judgment ought to be subject to reversal on such basis, at least when the evidence is sufficient to support it. Doing so only tends to undermine the respective roles of this and the intermediate courts without significant contribution to the criminal jurisprudence of the State....

834 S.W.2d at 360–61. The respective roles of trial court, intermediate appellate court, and this Court as a discretionary review court become hopelessly indistinct when this Court begins conducting *de novo* reviews of the courts of appeals' *de novo* reviews.

For the reasons stated herein, I concur in limited part and otherwise dissent.