COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-08-00182-CR |
| Appellant, | § | Appeal from |
| v. | § | 346th District Court |
| CANDICE KENDIKIAN, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20070D01656) |
|  | § |  |

## O P I N I O N

The State of Texas appeals a suppression order trial granted in favor of Candice Kendikian. For the reasons that follow, we affirm.

### FACTUAL BACKGROUND

Kendikian stands charged by indictment with the murder of and injury to Malachi Torrance, a child younger than fifteen years of age. Kendikian and her husband, Joshua Wensel, were both suspects, but neither was under arrest. The couple went voluntarily to the El Paso Police Department and each gave a separate statement which was videotaped. They were not told by the officers that these individual statements were recorded. Wensel then asked to speak to his wife. The police acquiesced and brought Kendikian to see him. The pair were not informed that their conversation would be recorded, and no camera, microphone, or recording device was visible in the room. The door was closed while the two talked, but there was no express representation that their conversation would be private. The detectives knocked on the door before re-entering. Kendikian left the room a number of times to try to call her mother. After their conversation, Kendikian and Wensel were allowed to leave the station.

The trial court entered a written order suppressing the recorded conversation between Kendikian and Wensel. The trial court also entered findings of fact which are not contested on appeal:

1. That on the date in question, The Defendant and Co-Defendant, Joshua Wensel, were brought by detectives of the El Paso Police Department to the Crimes against Persons office.

2. That on that date, neither of the defendants was under arrest for any accusation.

3. That on that date, the Defendant, Candice Kendikian, and Co-Defendant, Joshua Wensel were common-law wife and husband and that the detectives knew this fact.

4. That on that date, Co-Defendant, Joshua Wensel asked to speak with Defendant, Candice Kendikian and the detectives put both defendants in a room and shut the door.

5. That at no time, did the detectives inform either Candice Kendikian or Joshua Wensel that any conversation they had or would have would be recorded.

6. That the room in which the defendants were placed did not have any obvious signs of recording devices.

7. That the defendant was never advised that any statement or conversation she made or had was being recorded.

8. The detectives shut the door to the room and would knock before entering.

The trial court also issued conclusions of law. The State disputes only Conclusions 1, 4, and 5.

1. The actions of the detectives of the El Paso Police Department tended to create an atmosphere that a reasonable person could believe he or she had an expectation of privacy.

2. The defendants were not under arrest at the time of the conversation.

3. The detectives knew that the defendants were husband and wife.

4. The defendants, through the actions of the detectives, reasonably believed that they were having a private conversation.

5. That no warrant or exception has been shown to justify the breach of the expectation of privacy provided to the defendants.

**MOTION TO SUPPRESS**

In its sole point of error, the State complains that the trial court abused its discretion in suppressing the evidence of Kendikian's recorded conversation with her husband in a police interview room.

*Standard of Review*

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Long v. State,* 823 S.W.2d 259, 277 (Tex.Crim.App. 1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). At a suppression hearing, the trial judge is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Id.* We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but review *de novo* the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). If the issue of the propriety of the trial court's suppression of the recorded conversation is a question of law which does not turn on credibility or demeanor, we apply the *de novo* standard of review. *State v. Scheineman*, 77 S.W.3d 810, 812 (Tex.Crim.App. 2002).

*Reasonable Expectation of Privacy*

The State maintains that there was no expectation of privacy in a police interview room, and that even if Kendikian held that subjective belief, society is not prepared to recognize it as reasonable. We disagree.

The Fourth Amendment serves to safeguard an individual's privacy from unreasonable governmental intrusions. *Richardson v. State*, 865 S.W.2d 944, 948 (Tex.Crim.App. 1993). A defendant may challenge the admission of evidence obtained by governmental intrusion only if she

displays a legitimate expectation of privacy in the place invaded. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In determining whether Kendikian had a reasonable expectation of privacy, we must determine whether she exhibited a subjective expectation of privacy and, if so, whether that subjective expectation is one that society is willing to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The latter inquiry is a question of law. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).

We begin our analysis with *Scheineman*. There, the defendant and a co-defendant were arrested and placed in separate interview rooms. 77 S.W.3d at 811. The co-defendant asked a deputy if he could speak alone with the defendant. *Id*. The deputy agreed, moved the defendant into the room occupied by the co-defendant, and left the two of them alone. *Id*. The men then discussed their criminal conduct while the officers monitored and recorded their conversation. *Id*. The defendant argued that the deputy's conduct had "lulled" him into believing that the conversation was private and thereby gave him a legitimate expectation of privacy. *Id*. The court of criminal appeals disagreed, observing that a loss of privacy is an inherent incident of confinement, whether in a jail cell or a police station interview room. *Id*. at 813. Noting there was no evidence that the deputy had given the co-defendants any verbal assurance of privacy, the court held that society is not prepared to recognize a legitimate expectation of privacy in a conversation between two arrestees in a county law enforcement building, even if the arrestees are the only persons present and subjectively believe that they are unobserved. *Id*.

Kendikian argues that the facts here are distinguishable. She and her husband were merely suspects--not arrestees--and came to the station voluntarily. The detectives' conduct in arranging the meeting, placing the two in a private room, closing the door, and knocking before entering created an expectation of privacy. The video equipment was not visible, nor had the police revealed

that the individual statements had been recorded.

While a loss of privacy is an inherent incident of confinement, Kendikian and her husband were not confined; they were free to leave when they pleased. This is a critical distinction. We agree with the trial court's conclusion that the actions of the detectives created an atmosphere such that a reasonable person could believe she had an expectation of privacy. Under these circumstances, Kendikian had a reasonable expectation of privacy that society is indeed prepared to recognize. *See Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). We overrule the issue for review and affirm the order of the trial court below.

August 28, 2009

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)