Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-10-00390-CR

Rudy **PEREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR1099B
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:        Rebecca Simmons, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  August 10, 2011

AFFIRMED

Rudy Perez was convicted of murder and sentenced to forty years in prison. Perez appeals, complaining the trial court erred in denying his motion to suppress his video-recorded statement because the State failed to prove he knowingly waived his rights. We affirm the trial court's judgment.

## BACKGROUND

The victim, George Estrada, died as a result of blunt force trauma and sharp force injuries he received in a fight at a party at Rudy Perez's apartment. Perez was interviewed the day after the murder and denied any involvement. After other witnesses were interviewed, San Antonio Police Department Detective Jesse Salame came to believe that Perez had been among the group of people who attacked Estrada. Several witnesses stated they had seen Perez repeatedly kicking Estrada while another man was stabbing Estrada. Detective Salame obtained a warrant for Perez's arrest. Soon thereafter, Detective Salame was notified that Perez had been arrested in Corpus Christi on local warrants. Detective Salame drove to Corpus Christi and interviewed Perez at the Corpus Christi police department. The interview was recorded orally and visually. Perez filed a motion to suppress the statements he made during the interview.

Detective Salame testified at the pretrial hearing on the motion to suppress that the interview began at approximately 4:30 a.m., and lasted about one and one-half hours. According to the detective, Perez was alert and cooperative throughout the interview. Detective Salame testified he first read Perez his *Miranda* rights, and that Perez understood his rights and waived them. The detective stated he knew Perez understood his rights because he was nodding his head in agreement while the rights were being read to him and then answered "yes," that he understood. Detective Salame believed that Perez had waived his rights because after hearing and understanding his rights, Perez did not remain silent. The detective testified that Perez understood they were there to discuss the murder charge, and that he answered questions and was cooperative. Detective Salame testified that Perez did not ask any questions about his rights, never stopped the interview, and did not ask for an attorney. The detective stated he did not make any promises to Perez or use any deception or coercion.

The recording of the interview was admitted into evidence at the hearing and reviewed by the trial court. The recording begins at 4:48 a.m., and shows Perez in a small room. He is not handcuffed or restrained in any way and has a soda to drink. Detective Salame entered the room at 4:50 a.m. and introduced himself as a homicide detective with the San Antonio Police Department. The detective immediately read Perez his *Miranda* rights from a card. Perez periodically nodded his head affirmatively as his rights were being read. At 4:51 a.m., Detective Salame asked Perez, "Do you understand these rights?" Perez responded by asking if he had been arrested on the Corpus Christi warrants, and Detective Salame answered that he had been. Immediately thereafter, at 4:51:16, Perez said, "Yes, sir." Detective Salame ascertained that Perez understood he was there to discuss the Estrada murder. The interview continued until 6:10 a.m.

At the conclusion of the hearing on the motion to suppress, the trial court denied the motion and made the following findings and conclusions:

> [A]lthough the defendant never explicitly says, I'm waiving my rights nor does he sign anything indicating that he has waived those rights, it is also my opinion that that specific written expression or specific explicit statement indicating that he was going to waive them is unnecessary. That case law does, in fact, support that a waiver of rights can be done so without those two things -- one of those two things.
>
> And in this case, we do have Mr. Perez, at least, acknowledging with his response, yes, that he understood the rights aside from the fact that he is nodding his head and asking questions of the defendant at the time he also when asked by Detective Salame, do you understand, and he says, yes, and then he continues. And I think that case law does support you have to look at the totality of the circumstances and whether or not there was voluntary. [sic]
>
> And it is the Court's opinion that his continued discussion with Detective Salame after he expresses, yes, to whether or not he understands and his deliberate choice to continue talking and offering information to Detective Salame leads to his voluntariness and his willingness and deliberate choice to continue that interview.

As well as the fact that he does acknowledge understanding those rights, I believe he knowingly continued as well and it is not apparent to the Court that there was any coercion on the part of Detective Salame to have Mr. Perez continue the interview. And, in fact, Mr. Perez remains there for quite some time and continues to talk to both the detectives when Detective Salame remains and Detective, I believe, Willingham enters into the room.

So based on all of that, and the fact that, again, I believe he's there, he voluntarily continues to speak, and that he knew and understood his rights, I am going to allow DVD No. 2 also to come into evidence. I will deny the motion to suppress on DVD No. 2 as well.

A redacted version of the recording was admitted at trial.

On appeal, Perez argues his oral statement to police was admitted in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and section 3(a)(2) of article 38.22 of the Texas Code of Criminal Procedure because the State did not prove he knowingly waived his right to remain silent.

## LAW AND DISCUSSION

We review the trial court's ruling on a motion to suppress for abuse of discretion. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005), *cert. denied*, 549 U.S. 862 (2006). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* We will uphold the ruling if it is supported by the record and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

The State must prove by a preponderance of the evidence that Perez had knowingly and voluntarily waived his *Miranda* rights when he made the statement. *Berghuis v. Thompkins*, 130

S.Ct. 2250, 2260 (2010); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010); TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2) (West 2005). "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis*, 130 S.Ct. at 2260 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Perez first asserts the State failed to prove he understood his rights. The trial court found otherwise on the basis of Detective Salame's testimony, Perez's demeanor as shown on the recording both during and after the reading of his rights, and Perez's affirmative response to the detective's asking whether he understood his rights. The court's finding is supported by the record, and we therefore defer to it. *See Guzman*, 955 S.W.2d at 89.

Perez next contends that the trial court erred by implying a waiver of his rights from "nothing more than mere acquiescence . . . to the continued questioning." We disagree. *Miranda* "does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights." *Berghuis*, 130 S. Ct. at 2262. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* A waiver of rights under article 38.22 may also be inferred from the suspect's words and conduct. *Joseph*, 309 S.W.3d at 24–25. In the absence of an explicit waiver, we review the totality of the circumstances to determine if there was an implied waiver. *Joseph*, 309 S.W.3d at 25 n.7.

Where the State shows the *Miranda* warnings were given to the accused and understood by the accused, the "accused's uncoerced statement establishes an implied waiver of the right to

remain silent." *Berghuis*, 130 S.Ct. at 2262. Here, the recording reveals there was no intimidation or coercion, and Perez does not contend there was any coercive or improper conduct on the part of the police. Perez did not ask any questions about his rights, did not try to stop the interview, and did not ask for an attorney. Perez understood the purpose of the interview and willingly participated in it.

We hold the totality of the circumstances surrounding the interrogation shows Perez knowingly, intelligently, and voluntarily waived his rights under *Miranda* and article 38.22, and the trial court did not abuse its discretion in denying Perez's motion to suppress. We therefore affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do not publish