

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
| OMAR AGUILAR, | | No. 08-11-00266-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 41st District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20110D02385) |
| | § | |

**O P I N I O N**

Omar Aguilar appeals his convictions for aggravated assault on a public servant and evading arrest or detention with a motor vehicle. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Appellant was charged by indictment with aggravated assault on a public servant (Count I) and evading arrest or detention with a motor vehicle (Count II). On June 29 and 30, 2011, the case was tried before a jury. At the start of the trial, Appellant pled not guilty as to each count.

El Paso Police Officer Edmundo Amaya testified that on September 4, 2009 at approximately 1 p.m., he was monitoring a school zone when he witnessed Appellant speed past him in a minivan. Amaya pulled behind the vehicle to initiate a traffic stop and noticed that the passenger was not wearing a seat belt. Due to a line of traffic, the vehicle stopped. Officer Amaya dismounted his motorcycle, approached the vehicle and told Appellant the two reasons

for the stop. Appellant "immediately became sarcastic . . . and said, I wasn't speeding." Officer Amaya asked Appellant for his license and insurance which Appellant admitted he did not have.

Once the cars in front of Appellant's vehicle moved, Officer Amaya instructed Appellant to pull over to the side of the road. Appellant refused and said he was going home. Appellant then "took off." Officer Amaya mounted his motorcycle and followed. Appellant turned onto numerous streets, and finally entered a residential street. The officer attempted to catch up by pulling to the back left of Appellant's minivan. His motorcycle was even with the left rear tires and there was approximately one arm's length between the left side of the minivan and the right side of the motorcycle. Once Amaya got to "the back left quarter" of the minivan, Appellant swerved the vehicle far enough to the left that the vehicle crossed the center line. To avoid being hit, Officer Amaya performed a "brake and escape." Based on Officer Amaya's training and experience, he believed Appellant intentionally caused the vehicle to veer toward him.

Officer Amaya then repositioned himself behind the minivan. From this vantage point, he could see Appellant's face in the side mirror. Appellant had his left arm propped up, with his hand under his chin and was looking directly at the officer, "smirking and laughing."

Appellant continued driving and led Officer Amaya to a residence where he parked in the driveway and stepped out of the car. Amaya stopped his motorcycle and dismounted. As he began to approach Appellant, the latter tried to flee on foot. Amaya followed Appellant through the backyard and into an alley, but he was unable to catch him. At that point, other units arrived to help apprehension.

After the State rested but prior to the start of evidence in Appellant's case-in-chief, defense counsel asked the trial court to rule on his pretrial motion requesting that Appellant be

allowed to testify on his own behalf free from impeachment by prior convictions.[1]  During the discussion, the State identified four convictions that it intended to use, if necessary, to impeach Appellant: one felony conviction for assault on a public servant and three misdemeanor convictions, two for family violence assault and one for theft.  Defense counsel focused his argument on Appellant's prior felony conviction for assault on a peace officer, arguing that because the two offenses were so similar, the prejudicial effect outweighed the probative value.

The prosecutor responded that the close proximity between the charged offense and Appellant's prior offenses indicated a propensity for breaking the law.  He recognized that the similarity between Appellant's prior felony conviction for assault of a public servant and the charged offense could be prejudicial, but the impact could be neutralized by an instruction to the jury to refrain from considering the offenses for anything other than impeachment.

With respect to Appellant's prior felony conviction, the court then ruled as follows:

> In looking at the law that has been presented and hearing the argument, the Court is going to -- and having done the balancing test and looking at all the factors in *Theus* -- the Court is going to find that the assault on a public servant -- it is not a crime of moral terpitude. [sic]

> It is so similar to this crime.  Even though it was done close and it could -- there is a lot of credibility issues between one witness for the State and one witness for the defense.

---

[1]  Appellant's motion requested that, pursuant to Texas Rule of Criminal Evidence 609, the court prevent the State from impeaching Appellant "by any prior convictions of which the State has given notice of an intent to use for such purpose."  According to the motion:

I.
The prior convictions would so inflame the minds of the jurors that any value with reference to impeachment (these offenses having no particular correlation with truth-telling) would be outweighed by its prejudicial impact.

II.
To require that the jury hear the nature of [Appellant's] prior record as a condition of his testimony would have a chilling effect on his right to a fair trial under both the Texas and U.S. Constitutions.

The motion then listed the set of factors, as set forth in *Theus v. State*, 845 S.W.2d 874 (Tex.Crim.App. 1992) and urged that the trial court was required to consider such factors before permitting impeachment of a witness with prior convictions.

At this time, I'm not going to allow the State to proffer that.

With respect to the prior misdemeanor convictions, the judge noted that a family violence assault has been ruled a crime of moral turpitude under prior case law. Therefore, the three prior misdemeanor convictions would be admissible for impeachment purposes. The prosecutor again asked that the State be allowed to use the prior felony conviction for impeachment purposes, suggesting that the State be allowed to question Appellant about whether he had ever been convicted of a felony, without allowing the State to specify any details of the felony. The defense countered the impact would still be unduly prejudicial and would affect Appellant's ability to take the stand. The trial judge ruled that she would not allow the State to ask any questions related to the felony conviction but that based on Appellant's testimony, she may change her mind. Appellant did not testify.

## IMPEACHMENT EVIDENCE

In his sole issue for review, Appellant complains that because the trial court refused to guarantee that he could testify free from impeachment of prior convictions, Appellant "decided he couldn't risk having his prior convictions used to impeach him if he testified and decided not to testify." Accordingly, Appellant argues that the trial court's ruling effectively deprived him of his constitutional right to present a complete defense and violated Appellant's due process rights.

### *Standard of Review*

We review a trial court's evidentiary rulings for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). In reviewing a trial court's decision to admit prior convictions, we will reverse only upon a showing of a clear abuse of discretion. *Theus v. State*, 845 S.W.2d 874, 881 (Tex.Crim.App. 1992).

Texas Rule of Criminal Evidence 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

TEX.R.CRIM.EVID. 609. The Court of Criminal Appeals has articulated a list of non-exclusive factors to be considered in weighing the probative value of a conviction against its prejudicial effect: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 881.

### *Prejudicial v. Probative*

We begin with *Theus.* There, the trial court overruled the defendant's pretrial motions to testify free from impeachment by a prior conviction. *Theus*, 845 S.W.2d at 881. Theus took the stand and testified in his own defense, and the State impeached him with evidence of a prior felony conviction. *Id.* Here, Appellant chose not to take the stand and accordingly, he was never impeached. Therefore, as the State points out, he has failed to preserve error for review.

While the Court of Criminal Appeals has not directly addressed the issue, our sister courts have held that to preserve a claim for improper impeachment through prior convictions, a defendant must actually testify. *Morgan v. State*, 891 S.W.2d 733, 735 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd)("Because appellant chose not to testify, he was never actually impeached with evidence of the prior convictions."). Likewise, the United States Supreme Court has held that the federal corollary to Texas Rule of Criminal Evidence 609(a) requires that a defendant testify in order to preserve a pretrial ruling on the admissibility of prior conviction impeachment evidence. *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984).

- 5 -

The court explained that without a factual record of a defendant's testimony, a reviewing court cannot weigh the probative value against the prejudicial effect of impeachment. *Id*. at 40, 105 S.Ct. at 463. In contrast, if a defendant testifies and is impeached, the reviewing court has the benefit of examining the defendant's testimony, the prosecutor's cross-examination and the jury arguments in determining the impact of the impeachment. *Id*. In other words, a reviewing court must know the precise nature of a defendant's testimony in order to assess potential harm. *Id*.

Since Appellant never testified, he was never actually impeached with evidence of prior convictions. *See Morgan*, 891 S.W.2d at 735. We have no way no way of knowing whether the trial judge would have changed her mind. Because a conclusion of harmful error would be speculative, we overrule Issue One.

### *Constitutional Claims*

Though not framed as a separate issue, Appellant also asserts constitutional claims under the United States and Texas Constitutions. Specifically, he contends that the trial court's ruling violated: (1) his due process right under the United State's Constitution to present his own witnesses to establish a defense; and (2) his right to present a defense under the due course of law provision found in Article I, Section 10 of the Texas Constitution.[2] Appellant's constitutional claims have no merit.

The record shows that Appellant was physically free to testify at trial, but chose not to do so. Appellant has constitutional rights under both the United States and Texas Constitutions to present a defense and to due course of law. He does not have a constitutional right to testify free from impeachment. There is no authority to support the argument that the threat of impeachment

---

[2] Appellant fails to cite to the specific provisions of the United States Constitution upon which his argument is based. However, based on the context of Appellant's argument and the authorities relied on, it appears Appellant's argument is based on the right to present a defense articulated in the Sixth Amendment to the United States Constitution, made applicable to the states by the 14th Amendment to the United States Constitution.

unconstitutionally prevented Appellant from presenting his defense. *See Morgan*, 891 S.W.2d at 736 (acknowledging that the appellant did not have the right to testify from impeachment and finding that, where the appellant was physically able to testify but chose not to, no authority exists supporting the argument that the threat of impeachment unconstitutionally prevented the appellant from presenting his defense). We overrule Issue One in its entirety and affirm the judgment of the court below.

August 28, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)