**Walter RINCON a/k/a Miguel Rincon, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–96–00819–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 3, 1998.

Gary M. Polland, Houston, for appellant.

Rikke Burke Graber, Houston, for appellee.

---

12. *Jones,* 886 S.W.2d at 822.

Before YATES, AMIDEI and FOWLER, JJ.

## OPINION

FOWLER, Justice.

After the trial court denied his motion to suppress evidence and motion to disclose the identity of the confidential informant, Appellant, Walter Rincon a/k/a Miguel Rincon, entered a plea agreement with the State of Texas. Rincon pled guilty to the first degree felony of possession of a controlled substance, namely cocaine, with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp.1998). After Rincon entered his plea, the trial court, pursuant to the plea agreement, sentenced him to twenty-five years confinement in the Texas Department of Criminal Justice, Institutional Division, and a $5000 fine. Rincon appeals the denials of his motion to suppress drugs found on him and in a car he was driving and his motion to disclose the identity of the confidential informant. We affirm the trial court's rulings for two reasons. First, because of information a confidential informant ("CI") gave them, the police had probable cause to stop Rincon's car and then to search it. Second, the State has a privilege not to disclose the identity of its informant and none of the potential exceptions applied.

## THE CONTROVERSY

The facts of this case, set out below, show three things that are important to our resolution of this case: the great and accurate detail the police were given about Rincon's method of selling drugs so that they could be certain the person they were watching was Rincon and that he would be in possession of drugs when they stopped him; the additional details the officers obtained while paging Rincon; and the CI's lack of personal knowledge about the drug transaction.

Houston Police officer, William R. Rios ("Rios"), arrested a suspect for possession of cocaine. The suspect told police he would give them any information that he could to help himself out in court if the police would speak on his behalf when his case came to trial. The police decided to use him as a confidential informant.

The CI arranged for a drug buy with a man named Rincon at an apartment on Fondren. As the CI would not be present during the buy, he described Rincon's physical appearance and told Rios how the buy would occur. The CI described Rincon as a Colombian male with a short black afro and a mustache who always wore a black leather jacket. Rios testified that the CI also told him Rincon was always accompanied by another Colombian male, Rojas, who had short black curly hair and a mustache. Rios was told these two men drove a black, four door Nissan Sentra and always parked on the west side of a certain apartment building.

The CI told Rios the buy would occur in the following way. First, the two dealers would come to apartment 196 at the 9000 block of Fondren with the cocaine thirty to forty-five minutes after Rios entered a specific code in Rincon's pager. Once there, Rios would page them again, enter the same code as before, and leave them a telephone number to call. Since the apartment had no telephone, Rincon and/or Rojas would go across the street to a Sunny's food store to use the pay phone. Finally, the CI also told them Rincon and Rojas would arrive with a large quantity of drugs and, if no sale took place, they would leave the apartment quickly, taking the drugs with them. As Rios put it when questioned at trial, "there was no way they would leave the product, which was the cocaine, there at that apartment, they would take it back with them."

Before the buy occurred, Rios arranged for police surveillance around the building, so they could see Rincon continuously. Once the surveillance was in place, Rios paged Rincon and entered the code provided by the CI. Forty-five minutes after the page, a four door Nissan Sentra drove to the apartment building and parked on the west side of the building. Rincon, the driver, and Rojas exited the Nissan and walked into the building and into apartment 196. At this time, Rios again paged the number and entered the same code along with his mobile telephone number. Two minutes later, Rojas exited the building and walked over to the pay

phone outside Sunny's food store, where he picked up the phone and dialed a number. Within seconds, Rios' mobile phone began ringing. Rios did not pick up the phone, and after several more rings, Rojas hung up the phone without having spoken. When Rojas hung up, Rios' phone immediately stopped ringing. Upon hanging up the telephone, Rojas returned to the apartment building, and within ten minutes, Rincon and Rojas exited the apartment and drove away in the black Nissan Sentra. Rios and the other surveillance officer followed.

Because Rios believed these two individuals were the two individuals described by the CI, he believed they would be in possession of the cocaine, so he directed a marked patrol car to stop the vehicle. Once it was stopped, Rios and the other officers approached the car with caution because the CI had told Rios that Rincon would have a pistol. When he reached the car, Rios could see a pistol lying on the driver's side floorboard. He ordered Rincon from the car and a patrol officer searched him. The patrol officer found a small, hard chunk of powder cocaine, that looked as if it had been sliced from a brick of cocaine, stuffed in the front waist band of Rincon's pants. As Rios continued to look through the car's windows, he noticed a package wrapped in newspaper protruding from underneath the passenger's seat. According to Rios, this package was consistent in appearance with a wrapped kilo of cocaine.

At this point, both men were arrested and ultimately an indictment was issued. Before trial, Rincon filed a motion to suppress any evidence seized from the Nissan Sentra or from his clothing because he maintained the police lacked probable cause or reasonable suspicion to search the car or to arrest him. Rincon also filed a motion to require the disclosure of the identity of the confidential informant. The trial court denied these motions.

### PROBABLE CAUSE

In his first and second points of error, Rincon contends the trial court erred by overruling his motion to suppress evidence because he "was illegally seized without reasonable suspicion" in violation of the United States and Texas Constitutions. Rincon's real argument seems to be that the officers had no reasonable suspicion to stop Rincon's car because the informant's information was not corroborated and that the police had no probable cause to arrest him.

In reviewing a trial court's ruling, an appellate court must determine the applicable standard of review. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). "The amount of deference a reviewing court affords to a trial court's ruling on a 'mixed question of law and fact' (such as the issue of probable cause) often is determined by which judicial actor is in a better position to decide the issue." *Id.* If the issue involves a witness' credibility and demeanor, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* However, if the issue is whether an officer had probable cause, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* "In a recent decision, the United States Supreme Court held that, although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The reason for this rule is that "'probable cause and reasonable suspicion acquire content only through application.'" *Id.*

As we have said, Rincon claims the police did not have reasonable suspicion to stop him because the informant's information was not sufficiently corroborated. We disagree. In fact, we believe that the police had more than a reasonable suspicion to justify an investigatory stop of the Nissan Sentra; and we conclude the police had probable cause to stop the car and to search both it and Rincon. In reaching this conclusion we must answer two questions: (1) was the CI's information sufficiently corroborated to make his information reliable and (2) did the CI give enough detail to lead the officers to conclude that Rincon was in the process of committing an offense or that "there is a fair

probability that contraband or evidence of a crime [would] be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see Guzman,* 955 S.W.2d at 90.

On the first question, we have guidance from the United States Supreme Court in *Gates.* In that opinion, the police received an anonymous letter giving the police the names and general address of a couple in Bloomingdale, Illinois who, the letter said, made their living selling drugs. *See Gates,* 462 U.S. at 225, 103 S.Ct. 2317. The letter informed the police that the couple was going to make a buy in Florida, that the wife was driving to Florida on May 3, that the husband would fly down within a few days to meet her, and that they then would drive the drugs back to their home. *See id.* The letter also told the police the couple would have over $100,000 of drugs in the car and that they had over $100,000 of drugs in their basement. *See id.*

The police confirmed, that on May 5, the husband was scheduled to fly to Palm Beach, Florida. *See id.* at 226, 103 S.Ct. 2317. They observed him board the flight to Florida. Once Gates arrived in Florida, local agents of the Drug Enforcement Administration followed him to a hotel room registered to his wife. *See id.* The agents then observed Gates and a woman leave the hotel early the following morning in a Mercury, bearing Illinois license plates that were registered to a Hornet station wagon owned by Gates. *See id.* The car drove on a freeway frequently used to travel to the Chicago area. *See id.*

While Gates was returning to Bloomingdale, the police obtained a search warrant. Once Gates arrived in Bloomingdale, the police used that warrant to search his home and his car. *See id.* at 226–27, 103 S.Ct. 2317. The search revealed 350 pounds of marihuana, weapons, and other contraband in the house. *See id.* at 227, 103 S.Ct. 2317.

At the outset, the court noted four things of importance. First, the judge who had issued the warrant could have decided that the *modus operandi* of the Gates had been substantially corroborated. *See id.* at 226, 103 S.Ct. 2317. Second, the letter described above was insufficient on its own to establish probable cause because it had no indicia of reliability, but, it could be clothed with reliability through an affidavit from the investigating detective who confirmed all of the details given in the letter. *See id.* at 227–28, 103 S.Ct. 2317. Third, even in making a warrantless arrest, an officer could corroborate enough details given to him to amount to probable cause. *See id.* at 242–43, 103 S.Ct. 2317 (citing *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)). Fourth, the court noted the importance of being able to predict the future actions of third parties that are not easily predictable. *See id.* at 245, 103 S.Ct. 2317.

The court concluded that probable cause was established. *See id .* at 246, 103 S.Ct. 2317. In reaching this conclusion, the court said the following about probable cause: *"It simply requires that enough information be presented to the [magistrate] to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." Id.* at 230 n. 6, 103 S.Ct. 2317 (citing *Jaben v. United States,* 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)). To emphasize the relative vagueness of the level required to meet probable cause, the court had this to say: " 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " *Id.* at 235, 103 S.Ct. 2317 (citing *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Probable cause deals with probabilities. They are not " 'technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.* at 241, 103 S.Ct. 2317 (citing *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

Applying these guidelines to this case, we find, unquestionably, that probable cause existed to make the stop and to search Rincon and his car. Using one of the factors relied on by the Supreme Court in *Gates,* the CI's information, the police were able to predict Rincon's future behavior with excruciating detail—with even more detail than the police

in *Gates*. The CI gave Rios ten details whose accuracy Rios was able to confirm: (1) Rincon's pager number; (2) the code to alert Rincon that someone wanted to buy drugs; (3) the specific apartment building Rincon would go to; (4) which side of the building Rincon would park on; (5) the specific car make he would be driving; (6) that another man would accompany him; (7) a description of the two men as well as Rincon's jacket; (8) the specific apartment they would enter; (9) that the apartment had no phone and they would have to use a pay phone across the street to return a call; and (10) that they would stay at the apartment only a short time if no buy took place. In addition to these facts, the police were able to confirm, through seven more details, that the men in the black car were the ones they paged and who were going to sell them the drugs. These details include: (1) after the men entered the apartment Rios called them again and left his mobile number; (2) one of the men went to the pay phone and dialed a number; (3) within seconds, Rios' mobile phone was ringing; (4) when Rios did not answer, the man hung up; (5) the man did not speak while at the phone; (6) as soon as the man hung up, Rios' phone stopped ringing; and (7) the man returned to the apartment and the two men left shortly afterward. In short, the police had seventeen details that either confirmed information the CI gave them or confirmed that the men the police were observing were the ones with which they had scheduled the buy. This information provided sufficient detail to confirm the CI's reliability and to establish probable cause to stop Rincon and to seize him.[1] We conclude that the trial court appropriately overruled the motion to suppress and therefore, overrule points of error one and two.

## DISCLOSURE OF THE CI'S IDENTITY

■ In his final two points of error, points three and four, Rincon contends the trial court erred in denying his motion to disclose the identity of the confidential informant, and, as a result, violated the United States and Texas Constitutions. Again, we disagree.

The Rules of Evidence provide that the State has a privilege to refuse to disclose the identity of a person who has furnished information relating to an investigation of a possible violation of the law. *See* Tex.R.Evid. 508(a).[2] However, there are three exceptions to this privilege.

The first exception exists when the identity of the informer has been disclosed to those persons who would have cause to resent the communication. *See* Tex.R.Evid. 508(c)(1). As the confidential informant's identity has not been revealed, this exception is not applicable in this cause.

■ The second exception exists when it appears from the evidence of the case that the informer may be able to give testimony necessary to a fair determination of guilt or innocence. *See* Tex.R.Evid. 508(c)(2). The defendant has the burden of demonstrating that the informant's testimony is necessary for a fair determination. *See Abdel–Sater v. State*, 852 S.W.2d 671, 674 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). As we discuss below, Rincon did not satisfy this burden.

As required by the rule, the trial court held an in camera hearing to determine whether the identity of the informer needed to be disclosed. *See* Tex.R.Evid. 508(c)(2). After this in camera hearing, the trial court concluded that the CI could not offer any additional facts which would help Rincon, stating, "The confidential informant was not a party to the transaction, was not present at the transaction, and really could offer nothing, in my view, to the defense of this case."

1. Rincon complains a great deal about the phone call the CI made to set up the drug transaction because it was conducted in Spanish and occurred with a man named Miguel. According to Rincon, since Rios does not speak Spanish and therefore could not understand what the CI was discussing with Miguel, he could not confirm what was said during the conversation. In light of all of the details Rios had about Rincon's expected behavior, all of which turned out to be true, this conversation is insignificant.

2. For the former rule, see Tex.R.Crim.Evid. 508, 49 Tex.B.J. 226 (1986).

Like the trial judge, Rincon does not point to any testimony the informant could give that would be important to the case. Instead, he relies on the reasoning of *Anderson v. State*, 817 S.W.2d 69 (Tex.Crim.App.1991), to argue that the CI's identity should be revealed. However, in *Anderson*, the informant's testimony was relevant and important, because he was present when the undercover police officer made the buy, and therefore was a material witness who could give testimony necessary to a fair determination of guilt or innocence. *See Anderson*, 817 S.W.2d at 72. In this cause, *Anderson* is irrelevant because the CI was not present when the police made the buy. The only testimony the CI could provide would be about the conversation he had with Rincon setting up the buy. But, as we have said earlier, this conversation had no relevance to the outcome of the motion to suppress and, likewise was insignificant to a trial of the matter, had one occurred. Because the CI is not able to give testimony necessary to a fair determination of guilt or innocence, this second exception does not apply in this cause.

The third exception to the State's privilege is when the informant's information is relied upon to establish the legality of the means by which evidence was obtained and the trial court is not satisfied that the information received is reliable. *See* TEX.R .CRIM.EVID. 508(c)(3); *Washington v. State*, 902 S.W.2d 649, 656 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd). As with the first exception, this exception is not applicable because neither the trial court nor this court found that the CI was unreliable. In fact, the opposite is true.

In short, because Rincon cannot satisfy any of the exceptions in rule 508(c), he is not entitled to know the identity of the confidential informer and we, therefore, overrule his third and fourth points of error.

In sum, we affirm the trial court's rulings on the motion to suppress evidence and on the motion to disclose the identity of the confidential informant.