**Patricia Elvira GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–96–01556–CR, 14–96–01557–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 5, 1998.

Christopher M. Flood, Houston, for appellant.

Keli Pool Roper, Houston, for appellee.

Before AMIDEI, HUDSON and FOWLER, JJ.

## OPINION

FOWLER, Justice.

Appellant, Patricia Elvira Garcia, appeals from her conviction for the felony offense of

---

possession of a controlled substance, namely cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon Supp.1998). After her conviction, the trial court sentenced Garcia to five years imprisonment in the Texas Department of Criminal Justice, Institutional Division. In a consolidated appeal, Garcia also appeals her adjudication of guilt in an earlier charge of delivery of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 1992). After the trial court adjudicated her guilt, the trial court sentenced Garcia to five years imprisonment in the Texas Department of Criminal Justice, Institutional Division. Garcia appeals each of these conviction on one point of error, for a total of two points of error. We affirm the trial court judgment, in part, and reverse and remand, in part.

## BACKGROUND

On June 23, 1992, Garcia unlawfully, intentionally, and knowingly delivered by actual transfer a controlled substance, namely cocaine. On May 27, 1993, Garcia entered a plea of nolo contendere, and the trial court placed her on deferred adjudication for a period of ten years and fined her $500. As a condition of this deferred adjudication, Garcia could not commit an offense against the laws of Texas, of any other state, or of the United States. On January 4, 1996, Garcia unlawfully, intentionally, and knowingly possessed a controlled substance, namely cocaine. To this offense, Garcia pled guilty, and the trial court sentenced her to five years imprisonment. However, before Garcia entered her plea in the 1996 offense, she attempted to have the trial court withdraw her no contest plea in the 1993 offense claiming that she had received ineffective assistance of counsel in the 1993 offense. The trial court denied that motion and adjudicated her guilt in that offense, finding that Garcia committed an offense against the state of Texas and sentenced her to five years imprisonment.

## DISCUSSION AND HOLDINGS

With regard to her 1996 offense, Garcia contends the trial court erred in overruling her motion to suppress. Specifically, Garcia argues the cocaine which made the basis of her prosecution should have been suppressed because the officers who arrested her and seized the cocaine did not have probable cause or a warrant. We disagree.

In reviewing a trial court's ruling, an appellate court must determine the applicable standard of review. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997). "The amount of deference a reviewing court affords to a trial court's ruling on a 'mixed question of law and fact' (such as the issue of probable cause) often is determined by which judicial actor is in a better position to decide the issue." *Id.* If the issue involves a witness' credibility and demeanor, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* However, if the issue is whether an officer had probable cause, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* "In a recent decision, the United States Supreme Court held that, although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Id.* (citing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The reason for this rule is that "'probable cause and reasonable suspicion acquire content only through application.'" *Id.*

In Garcia's case, there was not a hearing on the motion to suppress evidence, and thus, the only evidence in the record regarding that motion is two affidavits from police officers. The first of these two affidavits read as follows:

AFFIDAVIT OF OFFICER FRED WOOD

Officer F. Wood is a Houston Police Officer reputable [sic] employed as a police officer in the narcotics division of the Houston Police Department and if called to testify under oath, would testify to the following facts:

On January 4, 1996 at approximately 4:15 p.m. in Harris County, Texas, I was contacted by a confidential informant who

has provided information on several occasions in the past which has proven to be credible and true.

On January 4, 1996, the confidential informant advised that he had just been in the company of the defendant and observed that she was in possession of several small plastic baggies of powder cocaine. The informant advised that he knew the suspect by the name of Patricia. The informant described Patricia as a hispanic [sic] female in her mid 30's, approximately 5' 2" tall, 125 to 135 pounds with long black curly hair and brown eyes. The informant also advised that the defendant was wearing a lace shirt revealing a bra underneath, a dark colored skirt and knee-high boots. The informant advised that he had seen "Patricia" place several clear plastic baggies of powder cocaine in her purse and made it known to him that she was going to work at 5:00 p.m. at "Chapo's Lounge". The informant also gave me a description of the vehicle driven by Patricia as a new burgundy colored Chevrolet conversion van.

I contacted officers Scoggins and Sgt. Culak of the Houston Police Department narcotics division and informed them of the information I had obtained regarding the suspect "Patricia" and advised them to set up surveillance at 4003 N. Main, which is the location of "Chapo's Lounge", in Harris County, Texas.

The second affidavit read as follows:

### AFFIDAVIT OF OFFICER F.P. SCOGGINS

Officer F.P. Scoggins is a Houston Police Officer reputably employed as a police officer with the Houston Police Department narcotics division who if called to testify under oath, would testify to the following facts:

On January 4, 1996 I was contacted by Officer F. Wood regarding a suspect who was possibly in possession of a controlled substance, namely cocaine. Sgt. Culak and I went to 4003 N. Main, the location of an establishment called "Chapo's Lounge". At approximately 5:00 p.m., I observed the suspect arrive at 4003 N. Main in a bur-gundy conversion van. Sgt. Culak and I approached the driver's door of the van and saw the only occupant of the van to be a hispanic [sic] female in her mid 30's, 125 to 135 pounds, with long black curly hair and brown eyes wearing a lace shirt revealing a bra underneath, a dark colored skirt and knee-high boots. I asked her to identify herself and she stated that her name was Patricia Garcia. I looked into the driver's side open door of the vehicle and observed a beige hand bag with brown straps and brown trim on the floorboard between the driver's seat and the passenger's seat. The purse was open and I could see in plain view several clear plastic baggies of cocaine in a slightly larger clear plastic baggie. The defendant was then placed under arrest for the offense of possession of a controlled substance. The substance field tested positive as cocaine.

Based on these two affidavits the trial court overruled Garcia's motion to suppress evidence.

■■■■ "When a defendant seeks to suppress evidence because of an illegal arrest that violates the federal or state constitutions, the defendant has the initial burden to produce evidence that defeats the presumption of proper police conduct." *White v. State,* 871 S.W.2d 833, 835 (Tex.App.—Houston [14 th Dist.] 1994, no pet.); *see Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986). The defendant can meet this initial burden by proving that the police seized him without a warrant. *See White,* 871 S.W.2d at 836. "Once a defendant proves that the police seized him without a warrant, the burden of proof then shifts to the State." *Id.* However, if the defendant does not produce any evidence that the arrest occurred without a warrant, the defendant fails to meet his initial burden and the burden of proof never shifts to the State. *See id.* In Garcia's case, the only evidence about the arrest is the two police affidavits. Neither of the affidavits state that Garcia was arrested without a warrant. Because Garcia produced no evidence to establish that a seizure occurred without a warrant, she has failed to meet her initial burden and the burden never shifted to the State. *See id.* Thus, the trial court

properly denied the motion to suppress, and we overrule Garcia's point of error in her appeal from her 1996 offense.

With regard to her 1993 offense, Garcia contends the trial court erred by denying her motion to set aside her plea of nolo contendere. Specifically, Garcia argues her nolo contendere plea should be set aside because her trial counsel in that cause was ineffective. Garcia argues that the attorney who represented her during her 1992 offense also represented her employer, Gonzalo Yanez. According to Garcia, this dual representation created a conflict which voided her plea. Garcia argues that her trial counsel, Gerlado Acosta, told her that she should enter a nolo contendere plea so that the State would dismiss Yanez. According to Garcia, Acosta told her that if Yanez was charged it could affect his liquor license, with the implication being that it would affect her job at Chapo's Lounge.

At the hearing on the motion to withdraw Garcia's plea, Acosta testified to the following:

Q: It's not unusual that they [the State] will dismiss a case if someone 'fesses' up to it?

A: That's true.

Q: And, so if Ms. Garcia elected not to take the deferred adjudication offer, or I guess really wasn't an offer, was without an agreed rec?

A: That's correct.

Q: Then Mr. Yanez would be stuck in trial, and Ms. Garcia—

A: That's correct.

Q: And in this instance, your loyalty would really be to Mr. Yanez?

A: It would be.

Q: And you told her that?

A: That's correct.

Q: But you also knew at the time that if she took the plea then they would dismiss Mr. Yanez' case?

A: That's true.

Q: And, in fact, on that date she entered her plea and got this good deal, Mr. Yanez' case was dismissed; correct?

A: That's true.

Q: Did the prosecutor tell you that they were dismissing Mr. Yanez' case because Patricia pled?

A: As I recall, they said if Patricia does not plead we're trying both of them. And I relayed that to both of them.

Q: That kind of put you in this dilemma somewhat of having to represent Mr. Yanez, which you were; correct?

A: That's correct.

Q: And the best thing for Mr. Yanez would be to have his case dismissed?

A: No question about it.

Q: And the way that you get his case dismissed is if Ms. Garcia pleads?

A: That's true.

Q: Did they tell you that they would dismiss Patricia's case if Mr. Yanez pled?

A: No.

Q: No. Just that they would dismiss Mr. Yanez' case if Patricia pled?

A: That's correct.

Q: And knowing that could be the outcome, you advised her to take the plea bargain; correct?

A: I gave her an option, either take it to trial or take it, it was entirely up to her.

For counsel to be ineffective, the defense attorney's actions must fall within the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Generally, to meet this standard, an appellant must show (1) that his counsel's representation was deficient, and (2) that the deficient performance prejudiced the defense. *See id.* at 687, 104 S.Ct. 2052; *accord Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994). However, when a conflict of interest is alleged, *Strickland* requires the appellant to show "that defense counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Banda v. State,* 890 S.W.2d 42, 60 (Tex.Crim.App. 1994). If appellant demonstrates this conflict, then the second prong of *Strickland* is met because prejudice is presumed. *See id.*

■ After reviewing the record, we believe that the representation provided to Gar-

cia by her lawyer in the 1993 conviction fell within the *Strickland* standard for ineffective assistance of counsel. Having shown that her defense attorney actively represented both Garcia and Yanez and that the State specifically offered to allow Yanez's case to be dismissed if Garcia pled guilty to the crime, Garcia has met the first *Strickland* prong. And, because prejudice is presumed, Garcia's case meets the second prong of *Strickland.* Therefore, we sustain Garcia' point of error that her plea should have been withdrawn because of ineffective assistance of counsel.

In sum, we affirm the trial court's judgment as it pertains to Garcia's 1996 conviction and reverse and remand the trial court's judgment as it pertains to her 1993 conviction.