Opinion issued March 2, 2006 











 







In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00247-CR
__________
 
JAMES CLAY FOX, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 895641
 

 
 
MEMORANDUM OPINION
          A jury found appellant, James Clay Fox, guilty of the offense of aggravated
sexual assault of a child


 and assessed his punishment at confinement for 20 years. 
This Court, in an unpublished opinion, affirmed appellant’s conviction.


 In a single
point of error, appellant contends that the convicting court erred in denying his
motion for forensic DNA testing. We affirm. 
Factual and Procedural Background



          At trial, Melissa Rundle, the mother of the complainant, a nine-year-old girl,
testified that she invited appellant, who was a friend of her deceased brother, to spend
his flight layover at her home in Houston. She intended to return appellant to the
airport later that evening, but appellant ended up staying at Rundle’s home for the
night. The following morning, Rundle found the complainant in bed with her. 
Rundle’s husband, who Rundle found sleeping in the complainant’s room, told
Rundle that the complainant had awakened him during the night and told him that she
was scared; Rundle’s husband had told the complainant to sleep with Rundle, and he
slept in the complainant’s bed. 
          Rundle took appellant to the airport the following morning and then went to
work. While Rundle was at work, she spoke with the complainant on the phone about
why the complainant had been sleeping in Rundle’s bed. Rundle stated that the
complainant’s answer, that she had been scared, bothered her. When Rundle returned
home from work later that afternoon, she spoke with the complainant and, based on
their conversation, Rundle suspected that appellant had abused the complainant. 
Rundle called for emergency assistance, and a Harris County Sheriff’s Deputy came
to interview Rundle and the complainant. 
          The complainant testified that she went to the store with her mother and
appellant and appellant gave her a piggyback ride. Appellant reached up the
complainant’s shorts and put his fingers into her vagina during the piggyback ride. 
The complainant did not initially tell anyone about appellant touching her vagina. 
Later that evening, when the complainant got out of the shower, appellant asked the
complainant if she would come to his room before she went to sleep. The
complainant promised him that she would. Moments later, while the complainant was
putting on her pajamas, appellant returned and hugged her, even though she had only
a towel wrapped around her waist and was not wearing a shirt. 
          When the complainant went into appellant’s bedroom, he kissed her on the lips. 
The complainant then went to her room and fell asleep. She woke up to find her
pajama bottoms had been pulled down and appellant was putting his fingers into her
vagina. The street lights, shining through the window, provided enough light so that
she could see appellant’s face. Appellant asked her whether she wanted him to stop,
and she said yes. Appellant then said he was going to do something to her that was
going to “feel good,” and he put his mouth on her vagina. The complainant testified
that she was scared and cried. When appellant left the room, the complainant went
to her parents’ room. After Rundle returned home from work, the complainant told
Rundle that appellant had sexually assaulted her in her bedroom the previous evening. 
The complainant’s testimony was unclear about whether she told her mother about
the piggyback ride the day after it happened or several days later. 
          Harris County Sheriff’s Deputy Darlene Thomas testified that she went to
Rundle’s house to investigate the report of sexual assault, and she spent 10 to 15
minutes interviewing Rundle and the complainant. Thomas noted that Rundle
appeared shaken and upset when she opened the door, and Rundle’s eyes were red
and watery, as if she had been crying. Thomas also noted that the complainant
appeared anxious, upset, nervous, and embarrassed. Thomas instructed Rundle and
the complainant to go to the Children’s Assessment Center for a sexual assault
evaluation.  
          Harris County Sheriff’s Detective Donald Wine testified that he investigated
the assault and that, as part of his investigation, he watched as the complainant was
interviewed at the Children’s Assessment Center. Wine testified that he watched the
complainant’s interview on a television monitor in another room, that the complainant
“gave a strong interview,” and that the complainant’s statements were specific and
exact.  
          Lisa Gefrides, who works in the serology and DNA laboratory of the Harris
County Medical Examiner, testified that testing was performed on evidence gathered
during the sexual assault evaluation of the complainant at the Children’s Assessment
Center. Swabs taken from the complainant’s vaginal area tested presumptively 
positive for amylase and blood, swabs taken of dried secretions found on the
complainant tested presumptively positive for amylase, and the complainant’s panties
tested presumptively positive for amylase. Gefrides explained that amylase is a
protein found in the human body and is present, in different forms, in all bodily fluids
except blood. Gefrides conceded that she was not able to tell from a positive amylase
test whether the amylase detected was in fact from saliva or whether it came from
some other bodily fluid. Gefrides stated that the positive result could have been
caused by the complainant’s own bodily secretions and, without further testing, it was
not possible to tell whether the amylase was from appellant’s saliva. All of the items
that tested presumptively positive were then submitted for DNA analysis, though
Gefrides could not testify concerning the DNA analysis because she did not conduct
it. On redirect, Gefrides testified that there is a test “called Y-STR” that would test
specifically for the Y-chromosome, which would indicate the presumptive presence
of male DNA on the swabs. However, Gefrides stated that Harris County did not
have the capabilities to conduct this “Y-STR” testing.
          Dr. Shannon Hayes, a physician at Texas Children’s Hospital, testified that she
conducted an examination of the complainant and assembled a sexual assault kit
during that examination. Hayes collected swabs of fluid from the complainant’s skin
and vaginal area. Hayes stated that, although the complainant’s exam was normal for
the most part, she did observe that there was some bruising in the complainant’s
vaginal area. Hayes stated that such bruising was possibly consistent with an oral
sexual assault. Hayes further stated that the complainant’s hymen was intact, and that
this finding probably meant that the complainant’s vagina had not been penetrated. 
Hayes admitted that she was unable to tell how old the bruising was or what had
caused it, but she stated that blood found in a vaginal swab indicated that some
trauma had occurred.


 
          Following his conviction, appellant filed a motion for forensic testing of DNA
evidence. In his motion, appellant specifically requested “the more sophisticated
form of Y-STR testing” of certain evidence, including “vaginal swabs” and “dried
secretions from the complainant’s panties.” In support of his motion, appellant cited
the testimony of Gefrides, who confirmed that the evidence tested was found to
contain amylase, a protein contained in all bodily fluids except blood, and who
conceded that “Y-STR” DNA testing could be used to determine whether the Y-chromosome, and thus whether any male DNA, was present in the evidence. 
Appellant attached an affidavit to his motion, and testified that the Y-STR testing he
sought “would conclusively show that [his] DNA was not present in any of the
samples taken from the complainant,” that this evidence “would have dispelled the
impression left with the jury by Gefrides’s testimony that [his] saliva could have been
present in the swabs,” that he has “continually maintained his innocence of these
allegations,” and that “there is a reasonable probability that [he] would not have been
convicted if these exculpatory findings had been obtained through DNA testing and
presented to the jury.”
          The State conceded that it still had the evidence in its custody, but requested
that the trial court deny the motion for DNA testing because appellant failed to
establish that identity “was or is an issue in the case” and because appellant failed to
show, by a preponderance of the evidence, that he would not have been convicted if
exculpatory results were obtained through DNA testing. After finding that appellant
failed to demonstrate that “identity was or is an issue” and that, by a preponderance
of the evidence, appellant “would not have been convicted if exculpatory results were
obtained through DNA testing,” the trial court entered an order denying appellant’s
request for DNA testing. 
Sufficiency of Motion
          We review a convicting court’s denial of post-conviction DNA testing under
a bifurcated standard of review. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App.
2002) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We
afford almost total deference to the convicting court’s determination of issues of
historical fact and application-of-law-to-fact issues that turn on credibility and
demeanor, while we review de novo other application-of-law-to-fact issues. Id. The
ultimate question of whether a reasonable probability exists that appellant would not
have been prosecuted or convicted if exculpatory results had been obtained through
DNA testing is an application-of-law-to-fact question that does not turn on credibility
and demeanor and is therefore reviewed de novo. Id.; see also Smith v. State, 165
S.W.3d 361, 363 (Tex. Crim. App. 2005).
          To grant a motion for post-conviction DNA testing, a convicting court must
determine whether (1) evidence, which has been subjected to a significant chain of
custody to establish its integrity, exists in a condition making DNA testing possible;
(2) identity was or is an issue in the case;


 and (3) the defendant has established, by
a preponderance of the evidence, that a reasonable probability exists that he would
not have been prosecuted or convicted if exculpatory results had been obtained
through DNA testing. Act of April 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex.
Gen. Laws 2, 3 (amended 2003) (current version at Tex. Code Crim. Proc. Ann. art.
64.03(a) (Vernon Supp. 2005));


 Thompson v. State, 95 S.W.3d 469, 471 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d).
          Appellant argues that “if the tests had shown that appellant’s saliva was not
present, or that it contained DNA from someone else’s saliva, there is a reasonable
probability that he would not have been convicted.” In appellant’s motion for DNA
testing, appellant argues that the testing “would have been more conclusive as to
whether another individual’s DNA was present in the swabs.” In his affidavit
appellant states that the testing “would conclusively show that [his] DNA was not
present in any of the samples taken from the complainant.” The State responds that
“the Y-STR DNA test appellant seeks can–at most–show whether or not a Y-chromosome is present in the physical evidence in question” and, thus, “whether a
male’s DNA is present on the evidence.” 
          Here, the test results sought by appellant do not create a reasonable probability
that appellant would not have been prosecuted or convicted. First, as appellant notes
in his motion, the test results could be negative for the presumptive presence of the
Y-chromosome and “conclusively show that [his] DNA was not present in any of the
samples taken from the complainant.” But this result would be consistent with, or at
least not contrary to, the physical evidence presented at trial, which showed that the
positive results for amylase could have been caused by the complainant’s own bodily
secretions and did not necessarily implicate appellant. Significantly, the jury found
appellant guilty on this evidence. Second, the test could be positive. However, the
State notes, based on the testimony presented at trial, that these results would show
only that a male’s DNA was present on the items, and appellant has not established
that the results of the tests he is seeking would exclude him as the perpetrator. In
fact, evidence that a male’s DNA was present on the items would actually support the
complainant’s testimony that she was sexually assaulted by a male.
          Accordingly, we hold that appellant failed to establish, by a preponderance of
the evidence, that a reasonable probability exists that he would not have been
prosecuted or convicted if exculpatory results had been obtained through the
requested testing. Having so held, we need not address appellant’s argument that he
demonstrated that “identity was or is an issue in the case.”
          We overrule appellant’s sole issue.



Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.


Do not publish. Tex. R. App. P. 47.2(b).