COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 02-06-152-CR

JAMES WRIGHT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In April 2002, a jury convicted Appellant James Wright of two counts of aggravated sexual assault with a deadly weapon and one count of possession of a firearm by a felon.  The jury assessed Wright’s punishment at forty-five years’ confinement for each of the aggravated sexual assault offenses and ten years’ confinement for the firearm offense.  We previously affirmed Wright’s conviction.  
See
 
Wright v. State
, No. 2-02-162-CR, 2003 WL 21101525, at *2 (Tex. App.—Fort Worth May 15, 2003, pet. ref’d, untimely filed) (mem. op.) (not designated for publication).  In one point, Wright now appeals the trial court’s denial of his post-conviction request for DNA testing.  We affirm. 

II. Factual and Procedural Background

For the sake of clarity, we again recite the facts of this case as we did in our prior opinion.  
See id. 
at *1.  

On May 8, 2001, Vicki Jackson walked down the street and was approached by a man and woman in a Jaguar.  The woman, whom Jackson knew by the name “Classy,” asked Jackson if she would like to go get a beer.  Jackson did not know the man driving the Jaguar, but she agreed and got into the back seat of the car.  The group drove to a club known as the Matchbox, and Classy got out of the Jaguar to get beer.  When Classy had not returned to the car after several minutes, the man in the driver’s seat became agitated, began fumbling under his seat, and pulled out a gun.  The man pointed the gun at Jackson’s head and pulled her over the seat into the front of the car.  The man accused Jackson and Classy of “setting him up” and told Jackson, “You gonna pay for this.”

The man drove Jackson to Katy Street and stopped the car.  He pointed the gun at Jackson’s head and forced her to perform oral sex on him in the front seat of the Jaguar.  Jackson testified that during the ordeal several witnesses passed by, but the man pointed his gun at them and told them to go the other way.  After Jackson performed oral sex on the man, he pulled her out of the car and made her pull her clothes down and bend forward against the side of the Jaguar.  While holding the gun to Jackson's head, the man penetrated Jackson's sexual organ with his own.  Jackson testified that she did not consent to have sex with the man.  The assault outside the Jaguar continued for about ten minutes while Jackson begged the man to stop and called out to the witness  for help.

Finally, a woman named Trevia Coleman came down the street calling loudly, “Pookie Ray.”  The man looked up at the woman calling out to him, stopped assaulting Jackson, ran around the car pulling up his pants, and drove away.  Coleman and a second witness stayed with Jackson in the street until the police arrived.

Officer Leary arrived at the scene, and witnesses told him that the assailant was a black male with a shaved head driving a maroon Jaguar.  Jackson informed Officer Leary that her assailant had tattoos on his arms of a rose and the nickname “Pookie.”  Coleman added that the man had something written on his upper back but said she could not be sure what the writing said.  Coleman also gave Officer Leary the true name of Jackson’s assailant, James Thomas Wright.

Officer Leary searched the surrounding area and discovered Wright outside of Louise Craven’s house about a quarter of a mile from the scene, standing next to his maroon Jaguar.  Tattoos on Wright’s body matched those described by Jackson, and a tattoo on his upper back read, “Mr. Wright.”  Officer Leary placed Wright under arrest.  Police found a gun holster inside Wright’s vehicle, and a gun matching the weapon described by Jackson hidden under a couch cushion inside Craven’s house.

At trial and in his first appeal, Wright unsuccessfully argued that there was insufficient evidence to prove aggravated sexual assault because the facts in the case arguably pointed to a situation where Wright found himself in a situation that developed into a quasi-consensual sexual encounter that did not meet the threshold of a criminal act.  
See id.
 at *1.  In April 2005, Wright filed his motion for post-conviction DNA testing and an amended motion for DNA testing in October 2005.  The State filed its reply to Wright’s request and its memorandum, findings of fact, and conclusions of law in March 2006.  The trial court subsequently denied Wright’s motion and adopted the State’s proposed findings of fact and conclusions of law. 

III. Discussion

In his sole point, Wright asserts that the trial court erred and abused its discretion by denying his DNA testing request.  The State responds that there was overwhelming evidence of Wright’s guilt presented at trial and, that he has failed to establish a reasonable probability that DNA would exonerate him.   

A trial court's denial of a motion for post-conviction DNA testing is reviewed under a bifurcated process.  
Rivera v. State
, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (citing 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); 
Green v. State
, 100 S.W.3d 344, 344 (Tex. App.—San Antonio 2002, pet. ref’d).  We afford almost total deference both to the trial court’s determination of historical fact and to its application of law-to-fact issues that turn on credibility and demeanor.  
Rivera
, 89 S.W.3d at 59; 
Green
, 100 S.W.3d at 344.  But we review de novo all other application of law-to-fact issues.  
Rivera
, 89 S.W.3d at 59; 
Green
, 100 S.W.3d at 344.  This de novo review usually includes the ultimate issue in post-conviction DNA testing cases, “whether a reasonable probability exists that exculpatory DNA would prove innocence.”  
Rivera
, 89 S.W.3d at 59.

To be entitled to post-conviction DNA testing under Chapter 64 of the Texas Code of Criminal Procedure, Wright bears the burden of establishing, by a preponderance of the evidence, that he “would not have been convicted if exculpatory results had been obtained through DNA testing.”  
See
 
Tex. Code Crim. Proc. Ann.
 art. 64.03(a)(2)(A) (Vernon 2006); 
Smith v. State
, 165 S.W.3d 361, 363–64 (Tex. Crim. App. 2005).  
Additionally, “[a]rticle 64.03(a) only permits a trial court to order DNA testing if the court finds that identity was or is an issue in the case.”  
Green
, 100 S.W.3d at 344 (citing 
Tex. Code Crim. Proc. Ann.
 art. 64.03(a)(1)(B)); 
Rivera
, 89 S.W.3d at 59 (citing
 Tex. Code Crim. Proc. Ann.
 art. 64.03(a)(1)(A)(i), (2)(A)).  Exculpatory evidence is evidence tending to establish a criminal defendant’s innocence. 
 Black’s Law Dictionary
 597 (8th ed. 2004).

Wright first argues that he has met the statutory requirements for post-conviction DNA testing because identity was an issue in the case.  In support of this contention, Wright cites portions of Jackson’s testimony where she failed to identify him as her assailant in court.  Wright also points us to the testimony of eyewitness Thelma Robinson who was likewise unable to identify him in court.  The State responds that because Wright argued at trial that the sex was consensual, identity was not an issue at trial.  However, the resolution of this question is not determinative here.  Under Texas Code of Criminal Procedure article 64, the trial court was only required to order DNA testing if it found both that identity was an issue 
and 
that Wright had established by a preponderance of the evidence a reasonable probability that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing.  
See 
Tex. Code Crim. Proc. Ann.
 art. 64.03(a)(1)(B), (2)(A).  Because we hold that Wright failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing, we need not decide whether identity was an issue at trial.

Jackson testified that she did not think that Wright ejaculated in her mouth, vagina, or anus.  Thus, there is no evidence that the absence of Wright’s DNA in or on Jackson would prove that he did not sexually assault Jackson.  Furthermore, Jackson did 
not 
testify that the only sexual contact she experienced on the day of the offense was during Wright’s assault.  In fact, Jackson acknowledged on cross-examination that the semen of three different individuals was found during her medical examination.  Therefore, the presence of multiple genetic profiles also does not exonerate Wright.  Lastly, DNA testing in this case has previously been performed, and the results were inconclusive.

As discussed above, there was a wealth of testimony and evidence presented at trial tying Wright to the assault.  Accordingly, we hold that Wright has failed to established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing.  
See 
Tex. Code Crim. Proc. Ann.
 art. 64.03(a)(2)(A).  Therefore, the trial court did not err or abuse its discretion by denying Wright’s motion for DNA testing.

We overrule Wright’s sole point.

IV. Conclusion

Having overruled Wright’s sole point, we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 25, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.