NO. 07-08-0109-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 14, 2009
______________________________

MILO CRADALE WILLIAMS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 55,244-D; HONORABLE DON EMERSON, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, Milo Cradale Williams, appeals his conviction for the offense of murder
and sentence of life imprisonment in the Institutional Division of the Texas Department of
Criminal Justice. We affirm.
Background 
          On April 19, 2001, a Toot’n Totum clerk was shot and killed during the early morning
hours while working at the Amarillo, Texas store. During the ensuing investigation, the
police spoke to witnesses, including Allison Reed, that described a four door sedan-type
vehicle in the area and a tall black man who walked by while the witnesses were at a
friend’s house near the store. The crime scene investigators gathered a spent bullet shell
casing as well as the store security videotape showing the killer wearing pantyhose over
his face and carrying a small handgun. No weapon was found at the scene nor in the
immediate vicinity. In the course of the investigation, police officers spoke with Notorry
Graves who viewed a photo lineup and identified Sedrick Ryan as a possible suspect in
the murder of the clerk. The police pursued the lead and eventually issued an arrest
warrant for Sedrick Ryan. In serving the arrest warrant upon Ryan, the police gathered
evidence from Ryan’s home including hair samples and a pair of pantyhose but did not find
a weapon. After interviewing Ryan and further investigating Graves’s statement placing
Ryan at the crime scene, the police determined that Ryan was not involved in the murder
and released him. No other suspects were developed and the case went unsolved.
          In 2006, Sargent Dockery began reviewing cold case files and reviewed the murder
of this Toot’n Totum clerk. In reviewing the evidence, Dockery discovered that appellant’s
name had come up during the initial investigation but the lead had not been investigated
further. Dockery reinterviewed witnesses and discovered that appellant had been in the
area of the Toot’n Totum on the night of the murder. In speaking with D.J. Golden,
Dockery learned that Golden, Charlie Meza, and appellant had stopped near the Toot’n
Totum to pick up another friend. While they waited for this friend, appellant left the vehicle
and was gone approximately five minutes. When appellant returned to the car, appellant
instructed the others to “go, go, go” even though they did not meet with the friend they had
planned on meeting. Dockery also spoke with Meza who confirmed Golden’s story. 
Additionally, Meza told Dockery that appellant had admitted to trying to rob the
convenience store. Next, Dockery spoke with Dannie Mae Golden, who was dating
appellant at the time of the murder. According to Dannie, she purchased clothing for
appellant on occasion and specifically recognized the clothing of the murderer as the same
type of clothing that she had purchased for appellant. During the cold case review, Officer
Jimmy Rifenberg reviewed the videotape and noticed that the murderer appeared to have
a birthmark behind his right ear. Rifenberg then reviewed a photograph of appellant and
observed that appellant also had a mark behind his right ear. Finally, Dockery was able
to verify through Meza’s statement that appellant would have had access to a four door
sedan similar to the one observed at the crime scene. With the additional information
obtained during the cold case review, the police arrested and charged appellant with the
murder.
          At trial, the State informed the trial court that it wished to further develop the
connection of appellant with a sedan similar to the car observed by witnesses on the night
of the murder. Meza testified that, on the night of the murder, they were in a Thunderbird;
additionally, Reed was shown a photograph of a Thunderbird and testified that it was
similar to the vehicle she observed on the night of the murder. At this point, the State
wished to present evidence that appellant had access to a Thunderbird. To do so, the
State sought to enter testimony from Dockery that a Ford Thunderbird was used by
appellant, Meza, and Golden to participate in a bank robbery approximately two weeks
after the murder. Appellant objected to any mention of the subsequent bank robbery but
his objection was overruled. Based on the testimony of the witnesses and police officers
as well as the physical evidence, the jury returned a verdict of guilty and the trial court
sentenced appellant to confinement for life in the Institutional Division of the Texas
Department of Criminal Justice.
          Appellant raises three issues on appeal contending that the: 1) trial court erred in
permitting references to appellant’s participation in the subsequent bank robbery involving
a Ford Thunderbird into evidence because such evidence was offered to prove appellant’s
character as a criminal; 2) trial court erred in permitting the references to appellant’s
participation in the bank robbery by driving a Ford Thunderbird because such testimony
was more prejudicial than probative; and 3) evidence was factually insufficient to support
the conviction for murder. We affirm.
Evidence of Other Bad Acts
          Texas Rule of Evidence 404(b) prohibits the admission of evidence of extraneous
offenses committed by the defendant for the purpose of proving that, on the occasion in
question, the defendant acted in conformity with the character demonstrated by the other
bad acts. See Santellan v. State, 939 S.W.2d 155, 168 (Tex.Crim.App. 1997). The rule
also provides exceptions to this principle such as when evidence is admitted to show proof
of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake
or accident. Id. If the opponent of extraneous offense evidence objects on the grounds
that the evidence violates Rule 404(b), the proponent must satisfy the trial court that the
extraneous offense evidence has relevance apart from its character conformity value. See
id.; Montgomery v. State, 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (op. on reh'g). If the
trial court determines the evidence has no relevance apart from supporting the conclusion
that the defendant acted in conformity with his character, it is absolutely inadmissible. See
Santellan, 939 S.W.2d at 169. On the other hand, extraneous offense evidence is
admissible if the proponent persuades the trial court that the extraneous offense evidence
tends to establish some elemental or evidentiary fact or that it rebuts a defensive theory. 
See id. at 168-69; Montgomery, 810 S.W.2d at 387-388. The trial court’s determination
of whether other bad act evidence has relevance apart from character conformity is
reviewed for an abuse of discretion. See Guzman v. State, 955 S.W.2d 85, 89
(Tex.Crim.App. 1997) (the standard of review on a trial court’s evidentiary ruling is an
abuse of discretion standard); Montgomery, 810 S.W.2d at 394. As long as the trial court's
ruling was within the zone of reasonable disagreement, there is no abuse of discretion and
the trial court's ruling will be upheld. Santellan, 939 S.W.2d at 169. Once the trial judge
has ruled on whether the evidence is relevant beyond its character conformity value, he
has ruled on the full extent of the opponent's Rule 404(b) objection. Id. The opponent
must then make a further objection based on Rule 403, in order for the trial judge to weigh
the probative and prejudicial value of the evidence. Id. To exclude extraneous offense
evidence under Rule 403, the opponent must specifically request a Rule 403 ruling. See
Montgomery, 810 S.W.2d at 388. 
          In the instant case, appellant contends that the trial court erred in allowing Dockery
and Golden to testify about appellant’s participation in a subsequent bank robbery claiming
that the State was seeking to admit the extraneous offense as evidence of appellant’s bad
character. However, the State sought Dockery’s testimony because “[t]hat connects
[appellant] to that type of vehicle, which is the same type of vehicle that was seen at –
located at the scene that night. And that’s the purpose of getting into that.” The State
further elaborated that it sought the testimony regarding the bank robbery as evidence
tying appellant to Golden and Meza, both of whom testified they were with appellant on the
night of the murder. The record shows that the trial court heard the contested testimony
outside of the presence of the jury. Before making a ruling on Dockery’s testimony, the trial
court heard testimony from Golden relating to the bank robbery, appellant’s participation
as a driver in the robbery, as well as testimony related to the vehicle itself. After hearing
both Dockery’s and Golden’s testimony, the trial court judge took a recess to consider the
admissibility of the evidence before allowing Dockery’s and Golden’s testimony.


 During
Golden’s testimony, Golden stated that appellant drove them to the bank in a Thunderbird. 
 The State showed Golden a photograph taken of the Thunderbird used in the robbery
which Golden identified as being the same vehicle that appellant had driven. That was the
same photograph that Reed had earlier testified as similar to the vehicle she had seen
parked near the Toot’n Totum at the time of the murder. Meza also identified the
photographed vehicle as the vehicle that Golden, Meza, and appellant had used on the
night of the murder. Next, the State had Dockery testify as to the foundation of the
photograph of the vehicle recovered during the investigation of the bank robbery. The
State sought to admit the factual resume from the federal robbery case; however, upon
review of the document, the trial court informed the State that it wished the resume
redacted because “what we’re trying to keep out of here is evidence at this point of other
bad acts.” Upon closer consideration of the document, the trial court suggested that the
document not be offered at all, but that Dockery instead simply testify to the portion of the
facts that appellant drove the others to the bank that they robbed. The State accepted the
court’s suggestion and only offered Dockery’s recitation of the facts from the resume.
          From the record, it is apparent that the trial court deliberated on appellant’s
objection. Further, the court acted as to limit the references to appellant’s participation in
the bank robbery to the sole issue of appellant’s participation in the bank robbery as a
driver of a Thunderbird. From its actions, it would appear that the trial court accepted the
State’s explanation that connecting the vehicle from the robbery to the vehicle observed
at the murder scene was probative evidence because it placed appellant at the scene near
the time of the murder. Therefore, the State satisfied the trial court that the extraneous
offense evidence had relevance apart from its character conformity value. See Santellan,
939 S.W.2d at 169; Montgomery v. State, 810 S.W.2d at 387. Additionally, the connection
of appellant with a sedan-type vehicle could have been relevant as to both identity and
opportunity. See Martin v. State, 173 S.W.3d 463, 467 (Tex.Crim.App. 2005) (trial court
ruling is to be upheld if the ruling is correct on any theory of law applicable to the case). 
Therefore, we conclude that the trial court’s decision was within the zone of reasonable
disagreement and, thus, will not overturn the trial court’s decision.
          Once the trial judge has ruled on whether the evidence is relevant beyond its
character conformity value, he has ruled on the full extent of the opponent's Rule 404(b)
objection. Santellan, 939 S.W.2d at 169; Montgomery, 810 S.W.2d at 388. The opponent
must then make a further objection based on Rule 403 in order for the trial judge to weigh
the probative and prejudicial value of the evidence. Id. To exclude extraneous offense
evidence under Rule 403, the opponent must specifically request a Rule 403 ruling. See
Montgomery, 810 S.W.2d at 388. In the instant case, appellant did not make a Rule 403
objection; therefore, we conclude that appellant waived this objection. Id. 
Factual Sufficiency
          In a factual sufficiency review, we must consider all of the evidence in a neutral light
to determine whether a jury was rationally justified in finding guilt beyond a reasonable
doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). The appellate
court views the evidence in a neutral light and asks whether the evidence supporting the
verdict is so weak or so against the great weight and preponderance of the evidence as
to render the verdict manifestly unjust. See Steadman v. State, No. PD-131-08, 2009 WL
838550, at *4 (Tex.Crim.App. April 1, 2009). A wrong and unjust verdict includes instances
in which the jury’s findings “shocks the conscience,” or clearly demonstrates bias. See
Grotti v. State, 273 S.W.3d 273, 280 (Tex.Crim.App. 2008). In doing a factual sufficiency
review, the appellate court must be mindful that a jury has already passed on the facts and
must give due deference to the determinations of the jury. See Lancon v. State, 253
S.W.3d 699, 704-05 (Tex.Crim.App. 2008). If the verdict is set aside, the court of
appeals’s opinion should clearly explain how the evidence supporting the verdict is too
weak on its own or how the contradicting evidence so greatly outweighs the evidence in
support of the verdict. See id. Further, if a court of appeals upholds a verdict, it is
required to consider the most important evidence that the appellant claims undermines the
jury's verdict and explain why it does not have the persuasive force that the party believes
is sufficient to overturn the verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.
2003).
          Appellant’s contention is that there was insufficient evidence focusing on what was
not presented to the jury. Appellant states that no evidence of a weapon, fingerprints, or
eyewitnesses at the scene of the crime was presented to the jury. Appellant further
comments on the poor quality and grainy nature of the videotape and the difficulty of the
video expert and officers in making a positive identification. Finally, appellant attempts to
discredit the testimony of Dannie Golden, D.J. Golden, and Meza as unreliable and
contradictory. 
          Viewing the evidence in a neutral light, it is true that there was no murder weapon
found or useable fingerprints in the store. However, the recovered spent casing was
identified as .25 caliber. D.J. Golden testified that appellant carried a .25 caliber gun. 
Appellant contends no eyewitness places him in the store at the time of the murder. 
However, both Golden and Meza stated that they were parked outside of the store waiting
for a friend at the time of the murder. Both Golden and Meza stated that appellant left the
vehicle for a short while. Also, Reed observed a sedan-type vehicle parked outside the
store on the night of the murder. Golden testified that, when appellant got back to the car,
he told them to “go, go, go.” Meza further testified that appellant later told him that
appellant had tried to rob the store. Appellant’s contentions are within the purview of the
jury’s determinations. See Lancon, 253 S.W.3d at 705. The jury was in the best position
to judge the credibility of the witnesses because it was present to hear the testimony and
observe the demeanor of the witnesses as opposed to an appellate court who relies on the
cold record. Id. Because the jury is the sole judge of a witness’s credibility and the weight
to be given the testimony, it may choose to believe some testimony and disbelieve other
testimony. Id. at 707. Although appellant is correct that no eyewitness placed appellant
inside the store, there is sufficient evidence when viewed in a neutral light, if believed by
the jury, that appellant was in the vicinity of the murder and attempted to rob the store.
          Next, on the issue of the videotape, Dannie Golden reviewed the videotape from the
store and testified that the person on the video wore clothing similar to the clothing she had
purchased for appellant. Rifenberg also reviewed the tape and observed a birthmark on
the murderer’s neck. However, on cross-examination, Rifenberg did acknowledge that
background noise may increase when the photograph is enlarged. Appellant contends that
the background noise could present an image of a birthmark on the neck of the murderer
as seen in the video, but, in actuality, the birthmark may not exist. During trial, appellant
was asked to stand up and the jury observed appellant had a birthmark behind his right
ear. Again, the jury is the sole judge of a witness’s credibility and the weight to be given
the testimony. Id. 
          Even though no weapons or useable fingerprints were found at the crime scene, the
videotape may be of poor quality, and the witnesses had contradictions in their testimony,
there was sufficient evidence, when viewed in a neutral light, for a jury to be justified in
finding appellant guilty beyond a reasonable doubt. In viewing all the evidence in a neutral
light, we cannot state with an objective basis that the great weight and preponderance of
the evidence contradicts the jury’s verdict. Grotti, 273 S.W.3d at 283. We must, therefore,
defer to the jury’s verdict. We overrule appellant’s third issue.
          For the foregoing reasons, we affirm the judgment of the trial court.  
 
                                                     Mackey K. Hancock

Justice





Publish.