Opinion issued August 11, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-10-01095-CR, 01-10-01096-CR

———————————

Johnniel Ferguson, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 228th District Court 

Harris County, Texas



Trial Court Case Nos. 1147702, 1167538

 



 

MEMORANDUM OPINION

          Appellant,
Johnniel Ferguson, pleaded guilty to the offense of injury to an elderly
individual,[1]
and the trial court deferred adjudication of his guilt and placed him on community
supervision for two years.  The State
subsequently filed a motion to adjudicate appellant’s guilt, alleging that
appellant had violated the conditions of his community supervision by failing
to pay fees and enroll in an anger management class.  After appellant pleaded true to the State’s
allegations that he had violated the conditions of his community supervision,
the trial court, in accord with his plea bargain agreement with the State,
assessed his punishment at confinement for ten years.  While appellant was on community supervision,
a Harris County grand jury issued a true bill of indictment, accusing appellant
of the offense of capital murder.[2]  After the trial court denied his motions to
suppress evidence, appellant, with an agreed punishment recommendation from the
State, pleaded guilty to the lesser included offense of aggravated robbery,[3] and the trial court, in
accord with the plea bargain agreement, assessed his punishment at confinement
for forty years, with the sentence to run concurrently with that in the injury to
the elderly individual case.  In two
issues, appellant contends that the trial court erred in denying his motions to
suppress evidence and his pleas of true to the State’s allegations in its
motion to adjudicate his guilt were involuntary.  

          We
affirm.   

 

Background

While appellant was on community
supervision for the offense of injury to an elderly individual, he became a
suspect in a capital murder case.  When Houston
Police Department (“HPD”) officers went to appellant’s house to request that he
accompany them to a police station, he requested that the officers allow him to
put on some socks, which the officers apparently denied.[4]  At the start of his interview at the police
station, appellant asked HPD Officers A. Ibarra and D. R. Daniel for a pair of
socks.  After Ibarra informed appellant
of his legal rights, appellant agreed to speak with Ibarra, who told appellant
that he had already spoken with other “co-defendants,” they had confessed their
involvement in the shooting and robbery of the complainant, and they had
explained appellant’s involvement.  After
Ibarra asked appellant to explain his involvement, appellant responded, “Just
throw me some white tube socks if I can get some white tube socks you feel me
I’ll probably be able to do something.” 
Ibarra then sent his partner to purchase some socks for appellant.  Once appellant received the socks, he
explained his involvement in the robbery and shooting of the complainant.  

Prior to trial, appellant filed two
pre-trial motions to suppress his statement, asserting that he did not make it
freely and voluntarily.[5]  At the trial court’s hearing on appellant’s
motions to suppress, the State introduced into evidence a transcript of
appellant’s statement, which the trial court had previously reviewed.  Neither appellant nor the State called a
witness to testify at the suppression hearing. 
Appellant’s trial counsel argued to the trial court that the transcript revealed
that appellant’s statement was not made voluntarily because appellant did not
make any incriminating statements until after he was given socks as “an
inducement and a promise of benefit.”  Counsel
noted that while the officers interviewed appellant at the police station,
appellant had bare feet and was cold.  He
asserted that when appellant asked for a pair of socks, the officers “were
coercing him, [and] pressuring him to change his statement.”  Counsel argued that appellant’s statement was
coerced because he did not tell the officers about his involvement until after
he had received the socks.  

The trial court denied appellant’s
motions, stating that it appeared “the officers were actually just trying to
make [appellant] comfortable” and he was not induced or coerced into providing
a statement.  In its findings of fact and
conclusions of law, the trial court concluded that appellant was not in custody
when he made the statement and he made it freely and voluntarily without
compulsion of persuasion.  It found that appellant’s
request for socks “was tantamount to a statement that he was thirsty,” the
socks provided to appellant were not an inducement given to coerce a statement
from him, the officers were trying to make appellant physically comfortable,
the socks were not of such a character as would be likely to influence
appellant to speak untruthfully, and Officer Ibarra “specifically addressed the
provision of socks to [appellant] during the statement and was simply because
[his] feet were cold and were not provided in exchange for a statement.”  

Voluntariness of Statement 

          In
his first issue, appellant argues that the trial court erred in denying his
motions to suppress his statement because “[g]iven the nature of [his] repeated
requests for socks, and Investigator Ibarra’s repeated contention that he
already knew what appellant had done, the transcript of appellant’s interview
supports the conclusion that appellant, believing he had nothing else to hope
for, negotiated for socks in exchange for his false confession.”  

The appropriate standard
for reviewing a trial court’s ruling on a motion to suppress evidence is
bifurcated, giving almost total deference to a trial court’s determination of
historical facts and reviewing de novo the court’s application of the law.  Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002).  We “should afford the same amount of deference
to [a] trial courts’ rulings on ‘application of law to fact questions,’ also
known as ‘mixed questions of law and fact,’ if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor.”  Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).  We conduct a de novo review where the
resolution of mixed questions of law and fact do not turn on an evaluation of
credibility and demeanor.  See id.
 Thus, when, as here, we have a
transcript of a statement and an uncontroverted version of events, we review
the trial court’s ruling on an application of law to facts de novo.  See Herrera v. State, 194 S.W.3d 656, 658
(Tex. App.—Houston [14th Dist.] 2006, pet. ref’d).

“A statement of an accused may be used in evidence against
him if it appears that the same was freely and voluntarily made without
compulsion or persuasion.”  Tex. Code. Crim. Proc. Ann. art. 38.21
(Vernon 2005).  When considering whether
a statement was voluntarily made, we consider the totality of the circumstances
in which the statement was obtained.  Creager v. State, 952 S.W.2d 852, 855
(Tex. Crim. App. 1997).  

A confession is involuntary if circumstances show that the
defendant’s will was overborne by police coercion.  Id.
at 856.  The defendant’s will may be
overborne if the record shows that there was “official, coercive conduct of
such a nature” that a statement from the defendant was “unlikely to have been
the product of an essentially free and unconstrained choice by its maker.”  See Alvarado
v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  

A defendant’s statement is also involuntary if it is induced
by a promise that was positive, made or sanctioned by someone in authority, and
of such an influential nature that it would cause a defendant to speak
untruthfully.  Martinez v. State, 127
S.W.3d 792, 794 (Tex. Crim. App. 2004).  The truth or falsity of a statement is irrelevant to
a voluntariness determination not only under federal constitutional law but
also under state law.  Id. at 794–95.  Under Texas law, the determination is whether
the officially sanctioned positive promise would be likely to influence the
defendant to speak untruthfully and not whether the defendant in fact spoke
untruthfully.  Id. at 795.  Under federal law, we must focus on official
coercion as it impacts the free will of the accused.  Smith v. State, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989).
 To determine if the alleged promise were
likely to influence the defendant to speak untruthfully, we must consider
whether the circumstances surrounding the promise made the defendant inclined
to confess to a crime he did not commit.  E.g., Garcia v. State, 919 S.W.2d 370,
388 (Tex. Crim. App. 1994) (en banc) (op. on reh’g).  

In support of his argument that his
statement was obtained involuntarily, appellant asserts that he refused to
answer any questions about the complainant’s death unless the officers provided
him with a pair of socks.  He further
asserts that once the socks were provided, he was then “obliged to uphold his
part of the exchange” and confess that he participated in a plan to rob the
complainant.  

However, this accommodation was not
an inducement given to coerce a statement from appellant.  Although appellant requested socks before
and during the interview, Officer Ibarra’s promise to provide appellant with a
pair of socks was not the type of promise that would typically be considered as
influencing a person to speak untruthfully. 
See Muniz v. State, 851 S.W.2d 238,
254 (Tex. Crim. App. 1993) (en banc) (determining that
promise to contact charitable agencies to assist the defendant’s wife and
mother was not the sort of promise that would likely cause someone to confess
to aggravated rape and murder);
Flores v. State, No. 14-08-00835, 2010 WL 5238580, at *5 (Tex. App.—Houston [14th
Dist.] Apr. 6, 2011, pet. ref’d) (mem. op.) (holding that promise of cigarette
did not rise to level of coercion nor render appellant’s statement involuntary).  

Here, Officer Ibarra read appellant his legal rights, and
appellant indicated that he understood those rights, agreed to speak with
Ibarra, and at no time indicated that he wished to speak with a lawyer.  During the interview, appellant did request a
pair of socks several times and told the officers that he would “tell the
truth” after receiving a pair of socks.  Once appellant received a pair of socks, he
then told Ibarra about his involvement in the shooting of the complainant.  However, appellant’s assertion that the
promise of a provision of socks induced him to confess is without evidentiary
support.  In fact, the transcript shows
that Ibarra specifically informed appellant that he was providing him with
socks because he was cold, and the socks were not in exchange for a confession
or statement, to which appellant agreed. 
Notably, appellant explained the reason for his request for socks—he did
not want to go to jail without socks.  At
the conclusion of the interview, appellant stated that the officers did not
promise him anything to “talk,” he “did it on [his] own,” he knew he had the
right to terminate the interview at anytime, and he was treated “good” and
“fairly.”  

Appellant was suspected of committing a
serious offense, and it is not likely that he would confess to such an offense
in exchange for a pair of socks.  See Flores, 2010 WL 5238580, at *2.  Based on the record presented, Ibarra’s provision of socks
cannot be characterized as a promise sufficient to induce appellant to
confess.  The evidence supports the trial
court’s conclusions that appellant knowingly waived his legal rights before
making his voluntary statement and he did not confess in exchange for a promise
of socks.  Accordingly, we hold that the
trial court did not err in denying appellant’s motions to suppress his
statement to the police officers on the ground that it was made
involuntary.  

We overrule appellant’s first issue.  

 

 

Adjudication of Guilt

          In
his second issue, appellant argues that the trial court erred in adjudicating
his guilt for the offense of injury to an elderly individual because his “plea
of ‘true’ to [the] alleged violations of his community supervision was
involuntary and based on the erroneous belief that his involuntary statement to
police would be admissible in his capital murder trial.”  

Appellant asserts that he would
“never have accepted the maximum sentence [for his community supervision
violations] but for the fact that it was a package deal that included his plea
of guilty to a reduced charge of aggravated robbery.”  He further asserts that he would not have
accepted the “package” sentencing “deal” if the trial court had not erroneously
denied his motions to suppress his involuntary statement.  However, as we have held, appellant’s
statement was not involuntary and the trial court did not err in denying his
motions to suppress.  Accordingly, we
hold that the trial court did not err in adjudicating appellant’s guilt for the
offense of injury to an elderly individual. 


We overrule appellant’s second
issue.  

 

 

 

 

Conclusion

          We
affirm the judgments of the trial court. 


 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, and Massengale.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 22.04
(Vernon 2011).  Trial court cause no.
1147702, Appellate court cause no. 01-10-01095-CR.  

 





[2]           See
id. § 19.03 (Vernon 2011).  Trial
court cause no. 1167538, Appellate cause no. 01-10-01096-CR.  

 





[3]           See
id. § 22.02 (Vernon 2011).





[4]
          The record is not clear as to
the circumstances under which appellant was taken to the police station.  The transcript of appellant’s statement
provides no information as to whether appellant was taken voluntarily or if he
was placed under arrest.  





[5]           See
U.S. Const. amends. V, XIV; Tex. Const. art. I, § 19; Tex. Code of Crim. Proc. arts. 38.22,
38.23 (Vernon 2010).